Amos M. WENTE, Trustee for Austin Supply & Drywall Co., Inc., Appellant,

v.

GEORGIA–PACIFIC CORPORATION, Appellee.

No. 14583.

Court of Appeals of Texas, Austin.

June 11, 1986.

Lisa Ott Laky, Law Offices of Baker & Price, Austin, for appellant.

R. James George, Jr., David H. Donaldson, Jr., Elizabeth A. Crabb, Graves, Dougherty, Hearon & Moody, Austin, for appellee.

Before POWERS, BRADY and CARROLL, JJ.

1. During the course of this litigation, Amos Wente was replaced as trustee by Martin Seidler.

2. The trial court found:
   1. The members of the alleged class are so numerous that joinder of all members is impracticable.
   2. While some questions of law or fact are common to the class, the questions of law or fact common to the members of the class do not predominate over questions affecting only individual members.
   3. The claims of Austin Supply and Drywall Co. are not typical of the class.
   4. The evidence does not establish that ... the bankruptcy trustee for Austin Supply and Drywall Co., would fairly and adequately protect the interest of the class.
   5. All requirements for certification of this action as a class action have not been met.

POWERS, Justice.

Amos Wente[1], bankruptcy trustee for Austin Supply & Drywall Co., Inc. (Austin Supply), filed a "class action suit" against Georgia Pacific Corporation (G–P) on behalf of Austin Supply and

> all other persons similarly situated, to wit: All other open account customers of Defendant in or doing business in the State of Texas who have contracted for, been charged by, or have paid interest to Defendant at rates prohibited by Texas law, ....

After a hearing, the trial court denied class certification[2] and Austin Supply appealed before final judgment as authorized by Tex.Civ.Prac. & Remedies Code § 51.014 (1986). We will affirm the order of the trial court denying class certification.

Austin Supply raises several points of error falling into two general categories: (1) the trial court erred in conducting the class-certification hearing before all court-ordered discovery had been completed, so that Austin Supply was not fully prepared on the issues pertinent to the hearing; and (2) the trial court erred in concluding that not all the requisites of a class action were satisfied. We will discuss the second category first.

## CLASS–ACTION PREREQUISITES

*In General.* "Class actions" differ from individual actions in the following respects: (1) the wrong complained of is not merely to an individual but is a wrong to a class of individuals and (2) the judgment in the case binds the entire class, not merely the named parties. These distinctive aspects warrant the four statutory prerequisites found in the Texas Rules of Civil Procedure:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Tex.R.Civ.P.Ann. 42(a) (Supp.1986).

The first two prerequisites pertain to the class itself and govern whether a class will be certified. In these two initial considerations, the dominant concern is judicial economy—i.e., providing the most economical way to adjudicate a large number of related causes of action. *See* 1 Newberg on Class Actions § 1110f at 184 (1977). The second two prerequisites deal with the competency of the plaintiff to represent properly the class. Thus, a trial court may refuse to certify a class either because the alleged "class" is determined not to be a class within the meaning of the rule *or* because the would-be representative plaintiff is not competent to represent the claims of the class.

Rule 42(c) commands the trial court to determine "as soon as practicable after the commencement of an action" whether that action shall be maintained as a class action. In making this determination, a trial court is given broad discretion. *Jones v. City of Dallas,* 604 S.W.2d 543 (Tex.Civ.App.1980, writ dism'd). Review of the decision is limited to whether the trial court abused its discretion. *RSR Corp. v. Hayes,* 673 S.W.2d 928 (Tex.App.1984, writ dism'd).

We conclude the trial court did not in the present case abuse its discretion in denying class certification. Our conclusion is based on our determination that the predominant questions of law and fact are not common to the class for which certification was requested.

*Common Questions of Law or Fact.* The common-question test is best understood in conjunction with the impracticability-of-joinder test because the two tests form the conceptual basis of class actions. Rule 42(a) does not require that *all* or even a substantial portion of the questions of law or fact be common to the class; it is only required that there exist *some* common questions of law or fact. Therefore, it is conceivable that a single common question would provide adequate grounds for a class action under the rule.[3] This is a logical assumption given the interplay between the need for judicial economy and the adjudication of a large number of related claims. A single issue, when pressed by a large class, may arguably call for class procedures to the same degree as multiple issues would, the quantitative component being the class size and not the issues raised.

■ It should also be noted that the common issue may be one either of law *or* fact. Some courts have denied class certification on the basis that there were not common questions of law *and* fact. In *Ward v. Luttrell,* 292 F.Supp. 165 (E.D.La.1968), a class action was brought on behalf of all female workers in the state challenging state labor laws that prescribed maximum hours that women could work, thus preventing them from earning overtime pay. Even though any challenger would necessarily raise the same legal issues, the court would not certify the class saying, "True the law would be common to the 'class,' but we cannot conceive that the questions of fact would be." 292 F.Supp. at 168.

However, this position seems unwarranted in light of the language of the rule, and the majority position is to the contrary. *Like v. Carter,* 448 F.2d 798 (8th Cir.1971), was an action on behalf of eligible welfare recipients seeking to force the agency to process their applications within 30 days. The trial court denied the class certification for a failure to meet the common-questions-

---

**3.** It may be disputed, since the rule says "questions," that there is at least some quantitative standard implied in the rule. *E.g.,* 7 Wright & Miller, Federal Practice & Procedure: Civil § 1763 (1972); *but see* 1 Newberg, *supra,* note .05, at 180.

of-law-or-fact requirement. The circuit court reversed the judgment and held that although the factual situations pertaining to the delays varied from case to case, common questions of law based on applicable statutes and regulations satisfied the requirement.

Two Texas courts have interpreted the analogous state-rule requirement to mean that there are "questions which when answered as to *one* class member are answered as to *all* class members." *Amoco Production Co. v. Hardy*, 628 S.W.2d 813, 816 (Tex.App.1981, writ dism'd); *RSR Corp. v. Hayes, supra.* This rule appears to be a sensible approach to the problem, and following the analysis in *Amoco*, we first inquire concerning what questions will predominate in a trial on the merits under the allegations made by Austin Supply.

Before May 8, 1981, the Texas usury law divided commercial transactions into essentially three categories: (1) if the parties to an agreement do not specify a rate of interest, an interest of "six percent per annum [is] allowed on all accounts and contracts ascertaining the sum payable," Tex.Rev. Civ.Stat.Ann. art. 5069–1.03 (Supp.1986); (2) if the parties agree on a rate of interest and the debtor is not a corporation or the debtor is a corporation and the account is less than $5,000, the maximum amount of interest charged is ten percent per annum, Tex.Rev.Civ.Stat.Ann. art. 5069–1.02 (1971); (3) if the debtor is a corporation and the account is more than $5,000, then the maximum interest allowed is eighteen percent per annum, Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 (1980).

Thus, before May 8, 1981, the transcending questions in determining whether an interest charge was usurious were as follows:

1. Did the parties agree on the amount of interest to be charged?

2. Was the debtor a corporation?

3. If the debtor was a corporation, was the account for more than $5,000?

On May 8, 1981, the Texas Omnibus Usury Bill, "HB 1228," Tex.Rev.Civ.Stat.Ann. art. 5069–1.04 (Supp.1986), became effective. This statute increased the basic usury ceiling for any *written contract* from the ten percent ceiling allowed by earlier law to a ceiling which floated[4] between a minimum of eighteen percent and a maximum of twenty-four or twenty-eight percent, depending on the kind of transaction involved.

The act also provided for four categories[5] of accounts:

1. Closed-end fixed

2. Closed-end variable

3. Open-end fixed

4. Open-end variable

Therefore, after May 8, 1981, a new set of questions pertained to usury actions based on written contracts, to wit:

1. What type of account did the debtor have?

2. What were the maximum amounts of interest allowable for the various time periods when the account was active?

In actions not based on a written contact, the questions remained the same as before the statutory changes.

■ Obviously, a usury action could raise a variety of controlling issues, especially in light of the 1981 act. In addition, the usury law is structured in a way that

---

**4.** This rate is tied to the interest rate of U.S. government treasury bills. The act also allows for the rate to be computed once, monthly, quarterly, or annually. *See*, Hightower, *The Current State of Usury Law in Texas*, 14 St. Mary's L.J. 149 (1983); St. Claire & Hogan, *The Revised Texas Usury Ceilings—A New Alice in Wonderland*, 14 St. Mary's L.J. 187 (1983).

**5.** St. Claire & Hogan, *supra*, argue that the act divides accounts into six categories:

1. Fixed-rate, Closed-end
2. Fixed-rate, Open-end
3. Floating, Variable-rate, Closed-end
4. Floating, Variable-rate, Open-end
5. Non-floating, Variable-rate, Closed-end
6. Non-floating, Variable-rate, Open-end
However, the Consumer Credit Commissioner has categorized Non-floating accounts as fixed-rate, which yields four categories.

the primary task is to determine the category into which the debtor's account must fall, making the initial questions *individual* and not *common*. We shall carry forward these general observations to the evidence presented at the class-certification hearing in the trial court.

Concerning all open-account customers of G–P, the evidence shows that some may have written contracts and some may not; some will be corporations and some will not; some of the corporations may have accounts less than $5,000 and some may have accounts more than that; and where a written contract exists after May 8, 1981, the maximum allowable interest will be different for different customers, depending on the type of account and when the interest is to be computed. In short, it is likely that every conceivable variation of this part of the usury law would be present in a class taken from all Texas customers of G–P having open accounts with the company.

Wente argues in his brief that, "[i]n the case at bar, the common question as to all class members is whether each one was subject to the application of G–P's consistent policy relating to interest charges on open accounts over a specific time period." However, this question, even though phrased to be identical as to all alleged class members, is not a common question within the meaning of the rule. The single question will produce a multitude of *answers* owing to the peculiar factual circumstances of the individual members. Thus, a question which inquires "whether each one was subject" to a certain policy is not a "common question" at all—it is an individual question.

This situation in the present appeal is quite different from that in *Like v. Carter, supra.* In the present appeal, the legal standard is not at issue; only the *application* of the legal standard to each separate instance is at issue. This situation is analo-gous to *Metcalf v. Edelman,* 64 F.R.D. 407 (N.D.Ill.1974), in which a class action was brought by welfare recipients alleging that officials had improperly failed to provide plaintiffs with a livelihood compatible with their health and well-being. The court refused to certify the class because resolution hinged on separate adjudications to determine whether each class member was being deprived of such a livelihood.

In *RSR Corp. v. Hayes, supra,* the court refused to certify a class in a suit brought against a lead smelter by residential property owners who claimed that the lead emissions damaged landowners within a two-mile radius. The court stated:

> The undisputed facts in the instant case show that the amount of lead on each class plaintiff's land varies greatly.... Therefore, the question as to the amount of lead on a class member's property, and the question of whether the lead, if any, is at a hazardous level which injures the class member, are questions not common to the class, because when they are answered as to one class member, they are not answered as to all class members.... The undisputed facts show that the question of RSR's liability is not common to the class. A finding that RSR is liable to one class member is not a finding that RSR is liable to each class member under each and every theory of liability.

673 S.W.2d at 932–33.

We do not hold that a class action is never proper in a usury action, for there may be certain well-defined sub-classes which would have at least one common question of law or fact which would best be addressed by class-action adjudication. Our only holding here is that the class alleged in this cause does not meet the prerequisites for a class action set out in Rule 42(a)(2) because there are no common questions of law or fact within the meaning of the rule.[6]

---

6. Several commentators have written that the "question of law or fact common to the class" requirement in the federal rule (from which the Texas Rule 42 is copied) is superfluous in light of the other requirements of the rule, because the requirements of section (b) presuppose the existence of common questions. Therefore, courts have been inclined to either ignore the

## THE CLASS CERTIFICATION HEARING

In the course of the proceedings below, Austin Supply obtained a court order requiring G–P to produce, among other things, the following documents:

Each invoice prepared by Defendant relating to each member of the Plaintiff class as defined in Plaintiff's Original Class Action Petition herein for the period of time from December 1, 1975 through the present time.

Each statement of account prepared by Defendant for submission to or actually submitted to each member of the Plaintiff class ... for the period of time from December 1, 1975 through the present time.

Each bookkeeping or accounting record of Defendant reflecting the charging or collecting of any interest or service charge on the account of each member of the Plaintiff class ... for the period of time from December 1, 1975 through the present time.

Each document or instrument in writing of any kind, whether generated by Defendant or some other party or person, to the extent same may be within Defendant's possession or control, which mentions the making of any charges, whether related to interest, service charge or otherwise on the account between each member of the Plaintiff class ... for the time from December 1, 1975 through the present time.

G–P refused to produce the documents in response to the initial order or two subsequent orders to the same effect. Instead,

G–P moved the trial court to deny the class certification request by Austin Supply, which denial was the ultimate object of its discovery efforts.

The motion by G–P to deny the class certification came on for hearing after G–P stipulated, and removed from controversy, two sub-issues: (1) the class of plaintiffs alleged by Austin Supply was indeed too numerous for their joinder to be practicable; and, (2) all G–P invoices after December 1, 1975 claimed, in essentially the same terms, the right to interest charges on late payment. G–P contended, nevertheless, that Austin Supply could not, as a matter of law, establish a common question of law or fact among the putative class. After the hearing, the trial court sustained G–P's motion and denied the class certification requested by Austin Supply, terminating, in effect, the court's previous discovery orders.

■ Austin Supply participated in the hearing and never requested that it be continued until after the completion of discovery. It contends on appeal, however, that the trial court abused its discretion in so terminating Austin Supply's discovery because such discovery might have enabled Austin Supply to establish the prerequisites of Rule 42. We disagree.

We do not see how additional discovery could have assisted Austin Supply in establishing the crucial matter of a common question of law or fact. As discussed at length in the initial part of this opinion, the inference of "usury" depends in each individual case upon the variable factors of incorporation, dates, and so forth. These

---

commonality requirement; treat it only in the context of the typicality-of-claims requirement; avoid a long analysis of commonality and say that it obviously exists; or merge commonality with the (b)(3) requirement that the common questions predominate over the individual questions. The result is that few courts deny certification of the class on commonality grounds. 3B Moore's Federal Practice § 23.06–1 (1985). The cases where courts have found that the plaintiff failed to show commonality are ones involving great factual diversity and in which the questions of fact, rather than questions of law, are determinative. "Thus where the legal

standard is not at issue and its articulation to each member of the class would require a separate fact determination, class treatment has been denied alternatively because there is no class and because the claims have no common question of law or fact." Id. at 23–181 to –182. We therefore, rest our holding on the single ground that there are no questions of law or fact common to the class. However, the reasoning which supports that conclusion would also lead to the conclusions that Wente's claims are not typical of the claims of the class and that individual questions predominate over common questions.

factors vary with each customer in the class alleged. Thus, the discovery attempt by Austin Supply could assist only in identifying *which* of the customers in the alleged class had in fact suffered usury. In such a case, the trial court was not obliged to allow discovery for that purpose. *See Commercial Travelers Life Insurance Co. v. Spears,* 484 S.W.2d 577 (Tex.1972). We hold, in consequence, that the trial court did not abuse its discretion in determining the class-certification issue while discovery remained uncompleted by Austin Supply.

Finding no error as assigned, we affirm the judgment below.