**TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, et al., Appellants,**

v.

**Opal PETTY, By and Through Her Next Friends, Linda KAUFFMAN, et al., Appellees.**

**No. 3–88–035–CV.**

Court of Appeals of Texas, Austin.

Sept. 20, 1989.

Rehearing Denied Nov. 1, 1989.

Jim Mattox, Atty. Gen., Dennis R. Garza, Asst. Atty. Gen., Austin, for appellants.

James C. Harrington, Texas Civ. Liberties Union, Deborah C. Hiser, Advocacy, Inc., Austin, for appellees.

POWERS, Justice.

Opal Petty and Advocacy, Inc. sued the Texas Department of Mental Health and Mental Retardation, and certain of its offi-

# 159

cials, alleging causes of action for money damages and other relief, based upon Petty's involuntary confinement in mental-health institutions operated by the Department. The trial court sustained a motion that Petty and Advocacy be permitted to maintain the actions as representatives of a class of individuals who had been, or would be, similarly confined for an indefinite period following civil-commitment proceedings. Tex.R.Civ.P.Ann. 42 (1979 & Supp.1989). The Department takes this interlocutory appeal from the class-action order. Tex. Civ.Prac. & Rem.Code Ann. § 51.014(3) (Supp.1989). We will affirm the order in part, and reverse and vacate the order in part.[1]

## THE CONTROVERSY

In 1977, the Supreme Court of Texas held that civil proceedings to obtain the involuntary commitment of individuals, for mental-health reasons and for an indefinite period, must be determined by a "preponderance of the evidence," rejecting a contention that due process of law required their determination "beyond a reasonable doubt." *State v. Turner*, 556 S.W.2d 563 (Tex.1977), cert. denied, 435 U.S. 929, 98 S.Ct. 1499, 55 L.Ed.2d 525 (1978). In 1979, however, the Supreme Court of the United States held that due process of law required their determination by "clear and convincing evidence," as opposed to a "preponderance of the evidence." *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Thereafter, the Legislature amended the applicable part of the Texas Mental Health Code, Tex.Rev.Civ. Stat.Ann. art. 5547–1 *et seq.* (1958 & Supp. 1989). The Code now requires a showing, by "clear and convincing evidence, that the person is mentally ill and meets the criteria

for court-ordered mental health services...." Tex.Rev.Civ.Stat. art. 5547–51(a).

Petty contends in her suit that the "clear and convincing evidence" now required by the Code is insufficient under certain provisions of the Constitution of the State of Texas which can only be satisfied by one of the following alternatives: "clear, unequivocal, and convincing" evidence; or evidence "beyond a reasonable doubt." She contends that all future civil-commitment proceedings for indefinite periods must be governed by one or the other of these two alternatives; and that all persons presently confined as a result of earlier proceedings are entitled to a judicial re-determination of their status, under one alternative or the other. She seeks as well to have the court establish certain other substantive and procedural requirements relating to involuntary civil-commitment proceedings and any prolonged periods of confinement that may result.

Following an evidentiary hearing, the trial court sustained Petty's and Advocacy's joint motion, based upon allegations in a first amended original petition, that the actions proceed as a class action under Rule 42. The trial court order designates Petty and Advocacy class representatives, and defines the class as "all persons who are currently or, in the future, will be involuntarily committed to or confined in mental health hospitals or facilities operated by" the Department. In the following language, the trial court determines the class-action "prerequisites" laid down in Rule 42(a):

The Court finds that the composition of the class herein is so numerous that joinder of all members is impractical. The

1. Opal Petty is a 71 year-old woman who has apparently spent most of her adult life in a mental institution. Her attorney of record is James C. Harrington. She brings the underlying action through her next friends, Linda Kauffman and Herbert Clinton Denson. Kauffman and Denson also alleged causes of action of their own, but their personal claims are not related to the present appeal.

Advocacy, Inc. joins as plaintiff in Petty's petition. Advocacy is a non-profit corporation formed to advocate the interests of mentally ill

and developmentally disabled persons. The plaintiffs' live petition recites that "Advocacy brings suit solely in its representative status for the benefit of the class."

Along with TDMHMR, the named defendants include Gary E. Miller, Jaylon Fincannon, Frankie E. Williams, Allen Williams, and Harold K. Dudley. These individuals have all been sued in their official capacities. For simplicity, we will refer collectively to the defendants as "the Department." All are appellants here.

Court also finds that there are questions of law and fact common to the claims of the class members.... The Court finds that the claims of Plaintiff Opal Petty are typical of those of the class.... The Court also finds that [Petty] will adequately and fairly protect the class interests....

Concerning the two grounds for the maintenance of a class action, as these are set out in Rule 42(b), the trial-court order declares:

The Court ... finds that there are questions of law and fact common to the claims of the class members which predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of this controversy[;] ... [t]he Court also finds ... that [the Department] actions or refusals to act, if any, are on the grounds generally applicable to the class, thereby making whatever final injunctive and corresponding declaratory relief granted, if any, herein appropriate with respect to the class.

In its appeal to this Court, the Department contends the order issued from an abuse of trial-court discretion.

## SCOPE OF REVIEW

■ None of the conclusions of law recited in the trial-court order are supported or explained by findings of fact. The trial judge was not obliged to file findings of fact in support of the interlocutory order, but he might have done so within thirty days after it was signed December 23, 1987. Tex.R.App.P.Ann. 42(a)(1) (Pamp. 1989) (trial judge need not, but may within thirty days after the "judgment" is signed, file findings of fact and conclusions of law in connection with interlocutory orders). The Department requested under Rule 296 that the trial judge file findings of fact and conclusions of law; however, the appellate record does not reveal that the judge failed to prepare them or that the Department called the omission to his attention within the time required by Rule 297. The Department does not complain on appeal that it was denied findings of fact and conclusions of law, or that the trial court abused its discretion in failing to file them.

The filing of findings of fact and conclusions of law, in connection with appealable interlocutory orders, is of course the better practice. *See Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549, 553 (1953) (where findings of fact underlying appealable interlocutory orders are desired, they "may" be requested under Tex.R.Civ.P. 296 and the predecessor of Tex.R.App.P. 42(a)); *cf. Price v. Lucky Stores, Inc.*, 501 F.2d 1177, 1179 (9th Cir. 1974) ("Implicit ... in Fed.R.Civ.P. 23 itself is the requirement that a trial court, in determining whether or not the case should proceed as a class suit, should make certain findings as to the Rule's provisions and their application to the case at bar."); 7B Wright, Miller & Kane, Federal Practice and Procedure § 1785, at 119 (2d ed. 1986) ("[T]he better practice is to make findings in order to aid the appellate court in reviewing the class certification decision.").

■ The Department bears the burden of providing an appellate record sufficient to demonstrate that the trial-court order rests upon reversible error, as opposed to the contrary presumption which the order carries on appeal to this court. That burden includes a duty to obtain findings of fact if these are necessary to demonstrate reversible error in the order, or to complain in that regard if the trial court improperly denied the Department such findings. The Department did neither. Consequently, we are left to review the Department's "abuse of discretion" contention without the benefit of trial-court findings of fact, in light of the pleadings and the evidence adduced in the evidentiary hearing, as the latter is shown in the statement of facts and the documents introduced in evidence.

■ In the present state of the appellate record, we are bound to presume the trial court found every issuable factual proposition necessary to sustain the class-action order, provided: (1) the proposition is one raised by the pleadings and supported by the evidence; and (2) the order can be sustained on any reasonable theory that is

consistent with the evidence and the applicable law, considering only the evidence favorable to the order. *Franklin v. Donoho,* 774 S.W.2d 308 (Tex.App.—Austin, 1989). To prevail on appeal in these circumstances, the Department must show that the undisputed evidence negatives one or more of the elements essential to the trial-court order; or the Department may show that Petty's pleadings omit one or more of the essential elements, and that the issues were confined to those raised by the pleadings. *Id.* These obviously are burdens not easily carried, but they are burdens easily avoided when a litigant understands the importance of a trial court's findings of fact and protects his position accordingly.

The Department does not complain of any defects in its opponents' pleadings, but contends in substance that the undisputed evidence adduced at the hearing negatives certain of the district court's conclusions of law which paraphrase the prerequisites to a class action established in Rule 42(a).

## PETTY'S COMPETENCY TO REPRESENT THE CLASS

The Department contends the evidence negatives the prerequisites to a class action found in Rule 42(a)(3) & (4):

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if ... (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These pertain to the representative's competency to represent the class. *Wente v. Georgia–Pacific Corp.,* 712 S.W.2d 253, 255 (Tex.App.1986, no writ). The two prerequisites overlap, and satisfaction of the "typical-claim" requirement is an integral element of the "fair and adequate protection" requirement, which is to say the latter includes the former and more. 1 Newberg, Newberg on Class Actions § 3.22, at 199–200 (2d ed. 1985).

█ The undisputed evidence shows that Petty was committed involuntarily to the Austin State Hospital in 1934 on the ground that she was "hebephrenic schizophrenic with moderate mental retardation." The evidence does not show the evidentiary "standard" applied in the commitment proceeding in her case. Presumably it was by a "preponderance of the evidence," for that is the minimum "standard" by which any fact can be determined. She remained in the hospital until 1971, when the authorities transferred her to the San Angelo State School. The school "furloughed" her to a community foster home in 1985. She resides in the same status, at the present time, with her niece and nephew, Linda Kauffman and Clint Denson.

The Department argues that the foregoing evidence establishes conclusively that Petty's *claims are not typical* of those possessed by the class because Petty is not presently confined in an institution operated by the Department. This reasoning erroneously imputes to Rule 42(a)(3) a "membership-in-the-class" requirement. It is settled that the corresponding provision in Fed.R.Civ.P. 23(a)(3) does not imply such a requirement; so far as Rule 23(a)(3) is concerned, it is immaterial whether the representative is a *present* member of the class because that question is immaterial in determining whether his *claim* or *defense* is "typical" of that belonging to the class. *See* 1 Newberg, §§ 2.10–2.11 (pointing out that similar arguments are really addressed to the question of whether the representative has "standing" to bring an action at all, a confusion also discussed in 1 Newberg, §§ 2.05–2.09). We construe in the same way our own Rule 42(a)(3).

█ The Department's argument complains, at most, that Petty's own claim is moot under the undisputed evidence. Even if its claim was moot, that would not necessarily preclude Petty's serving as representative of the class. *See* 1 Newberg, *supra,* § 3.35. But we believe the trial court might reasonably have concluded that her claim was not moot on several legal theories consistent with the pleadings and the evidence. The court might have

believed, for example, that her "furlough" status corresponded in law to confinement, or that it subjected her to an involuntary transfer to a state mental hospital, as authorized by Tex.R.Civ.Stat.Ann. art. 5547–300, § 46(b) (Supp.1989). *See* 1 Newberg, § 2.17. Or the trial court might have concluded that Petty's individual cause of action falls within an exception to the mootness doctrine, by analogy to the "collateral consequences" of a mental-illness determination mentioned in *Lodge v. State*, 597 S.W.2d 773, 775–76 (Tex.Civ.App.), aff'd, 608 S.W.2d 910 (Tex.1980).

■ The Department also contends that Petty's claims were proved atypical because the evidence showed that she was diagnosed as being mentally ill *and* mentally retarded, and because it was not shown under what evidentiary "standard" she was committed in 1934. We reject these arguments as well. The trial court was entitled to presume that the determinations in Petty's commitment proceeding, and in all similar proceedings in the past, were made by a preponderance of the evidence, the minimum "standard" by which the attendant facts could be determined, or at most by "clear and convincing" evidence, neither of which furnished the level of protection implicit in the two alternative "standards" for which Petty contends. This is what the law required in the past. Presumably, the law was followed. If the Department wished to show she was committed under either of the two alternative "standards," for which Petty now contends, it was obliged to introduce evidence to that effect and failed to do so. The substance of Petty's pleadings was to contend for these two alternative "standards," and to have them applied retroactively to persons now

in confinement and to any against whom involuntary-confinement proceedings are brought in the future, in which an indefinite civil commitment is requested. Her claim and those of all class members rest on the identical legal theory that the State constitution requires one of the two alternatives in such proceedings; and under her allegations the Department conduct alleged to be unconstitutional affected all of them in exactly the same way, if it was indeed unconstitutional.[2] No more was required to satisfy Rule 42(a)(3), and any varying fact patterns associated with individual claims did not preclude a finding of "typicality." 1 Newberg, § 3.13, at 167; *see also De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983).

The Department contends finally that the evidence established conclusively that Petty, as representative of the class, did not meet the prerequisite of Rule 42(a)(4). That provision requires that the representative "fairly and adequately protect the interests of the class." The record shows no conflict between Petty's claim and the claims belonging to the class, and the Department does not challenge the adequacy of Petty's attorney of record. We hold in consequence that the Department has not shown error with regard to the trial court's determination that Petty will fairly and adequately protect the interests of the class. 1 Newberg, § 3.22, at 200. We should say in fairness that the Department directs most of its argument on the point to the representative status given Advocacy, a matter discussed below.

We therefore conclude the Department has not shown reversible error with respect to the trial court order that the cause pro-

---

**2.** We do not, of course, imply by our opinion in the present appeal any view concerning the validity of Petty's contentions regarding what measure of persuasion the State constitution requires of the fact finder in civil-commitment proceedings. She contends for one of two measures: (1) "clear, unequivocal, and convincing" evidence; or (2) evidence "beyond a reasonable doubt." The distinctions between measures of persuasion intended by such expressions are tenuous indeed, and little is gained when one merely multiplies the words used to impart distinctive meanings to them. Who, for example,

can really distinguish between evidence that establishes a fact "beyond a reasonable doubt," as opposed to evidence that establishes the fact clearly, unequivocally, and convincingly?

We believe the correct idea was suggested in *Pierce–Fordyce Oil Ass'n v. Staley*, 190 S.W. 814, 815 (Tex.Civ.App.1917), where the court stated that a requirement for "clear and satisfactory" evidence meant simply "that the nature of the case demands a closer scrutiny of the weight of the evidence than in an ordinary controversy." *See generally*, McBaine, Burden of Proof: Degrees of Belief, 32 Cal.L.Rev. 243 (1944).

ceed as a class action, with Petty representing the class.

## COMPETENCY OF ADVOCACY, INC. TO REPRESENT THE CLASS

In Petty's first amended original petition, Advocacy joined as plaintiff under the apparent authority of a different attorney of record than Petty's. The petition averred that Advocacy was a not-for-profit Texas corporation organized "to protect the legal rights of persons who are developmentally disabled, including persons with mental retardation," as well as "a statewide legal advocacy system established pursuant to 42 U.S.C. sec. 6012." Moreover, the petition declared, by reason "of Public Law 99–319, 'the Protection and Advocacy for Mentally Ill Individuals Act of 1986,' Advocacy's legal authority was expanded to protect persons with mental illness against abuse, neglect, or rights violation." On these allegations, Advocacy sued "solely in its representative status for the benefit of the class."

Advocacy's attorney of record joined in the motion for a class-action order, and the order we now review contains the trial court's determination "that Plaintiff Advocacy, Inc., has standing to represent the class. . . ." The trial court's determinations as to the requirements of Rule 42 do not distinguish between Advocacy and Petty, as "plaintiffs" and "representative" of the class. We therefore assume the trial court meant the same determinations to apply to both.

On appeal, the Department contends the record conclusively established Advocacy's incompetence to represent the class. The Department refers in this respect to Advocacy's refusal to pay discovery expenses; however, we find no evidence regarding that matter, nor any indication that it was ever brought to the attention of the trial court. The Department makes, in addition, rather vague complaints regarding the legal abilities associated with Advocacy's conduct of the litigation. We do not believe these matters to be controlling.

In its order the district court concluded that "Advocacy, Inc. has standing to represent the class by virtue of the statutory authority described in its brief."[3] The "brief" referred to by the district judge does not appear in the record before this Court. The record does not suggest why the class required additional representation by Advocacy even though the trial court determined simultaneously that Petty's representation of the class was "adequate." The record does establish, however, that the judge intended by his order to include Advocacy as a party-plaintiff representing the class of which it was presumably a member. We will reverse and vacate this part of the trial court order for any of the several reasons given below.

■ In general, any litigant seeking to maintain a class action in the courts of this State must satisfy the procedural requirements of Rule 42. The State contends Advocacy is not competent to serve as class representative under the provisions of the Rule. Advocacy rejoins that it occupies a special status which permits its representation of the class *notwithstanding* Rule 42. We disagree with Advocacy's theory of law.

We are aware that in certain instances the Legislature has expressly empowered the attorney general to act as a party plaintiff in prosecuting class actions on behalf of injured third persons. *See, e.g.,* Tex. Educ.Code Ann. § 32.51 (1987) (violations of the Proprietary School Act); Tex.Ins. Code Ann. art. 21.21, § 17 (1981) (unlawful insurance acts and practices); Tex.Rev.Civ. Stat.Ann. art. 4447w, § 6 (Supp.1989) (veterans seeking information regarding Agent Orange and other causative agents). We find *no* express statutory authority of that kind, in regard to the prosecution of *any* class action by Advocacy—let alone the present class action against a State agency and certain of its officials which seeks a declaration that a State statute is unconstitutional.

---

**3.** Because the trial judge failed to file findings of fact and conclusions of law, we cannot ascertain definitely the specific "statutory authority" to which the district-court order refers.

We are also aware that certain federal statutes govern specific kinds of class actions which are not within the scope of Fed.R.Civ.P. 23, the federal, class-action counterpart to Tex.R.Civ.P. 42. *See, e.g., General Telephone Co. of the Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) (E.E.O.C. empowered to bring class actions against private employers under authority of § 706(f)(1) of Title VII of the Civil Rights Act of 1964); *see also* 1 Newberg, § 2.02, at 32 n. 6. However, we find no federal authority which establishes such an express exemption for class action proceedings brought in State or federal courts by groups such as Advocacy.

While it is difficult to discern from its brief, Advocacy appears to argue a theory that it obtained a special statutory class-action standing by implication from two federal statutes: The Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C.A. § 6000 *et seq.* (Supp.1989) and The Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C.A. § 10801 *et seq.* (Pamp.1989) These statutes say nothing of class actions, however, and we do not understand them to confer upon Advocacy any "standing" whatsoever. We read the statutes in harmony with the interpretation given the former statute by the United States Supreme Court:

> [T]he Act[s'] language and structure demonstrate [they are] mere federal-state funding statute[s]. The explicit purposes of the Act[s] are simply "to assist" the States through the use of federal grants to improve the care and treatment of the [mentally ill and] mentally retarded.

*Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 18, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981).

■ We fail to find in these statutes any hint of congressional intent to confer upon fund recipients, like Advocacy, a special "class-action standing." Without such statutory authority, Advocacy must satisfy the traditional requirements necessary to maintain a class action under Rule 42. *Cf. General Telephone Co. of the Southwest v.*

*Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982) (litigants seeking to maintain federal class actions must meet traditional Rule 23 requirements absent special statutory authorization). The State contends Advocacy is not competent, as a matter of law, to serve as class representative under Rule 42. We agree.

■ As with its contentions regarding Opal Petty, the State frames its challenge to Advocacy under the Rule 42(a) requirements of "typicality" and "adequacy." We reemphasize that these prerequisites deal with the competency of a plaintiff to represent properly the class. *Wente*, 712 S.W.2d at 255. A determination of competency necessarily presupposes, of course, that the representative has met the threshold requirement of standing to bring the action, for if the purported class representative fails to establish the requisite of a litigable controversy with the defendant, he may not obtain relief on behalf of himself *or* any member of the class. *O'Shea v. Littleton*, 414 U.S. 488, 493–94, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *see also* 1 Newberg, §§ 2.05—2.09. Indeed, "[i]f a [class-action] plaintiff does not assert that he or she as an individual suffered a concrete injury, then the court's inquiry must cease." Shepard's, Manual of Federal Practice § 3.140, at 134 (2d ed. Pamp.Supp. 1986).

The party seeking to litigate the claims of a class has the burden to prove its right to maintain an action as a class action. *Life Insurance Co. of the Southwest v. Brister*, 722 S.W.2d 764, 770 (Tex.App. 1986, no writ). We think it axiomatic that a showing of standing is included within that burden. As a matter of law, Advocacy failed to carry that burden.

Organizational plaintiffs, such as Advocacy, "may sue individually or in a class suit for injuries and damages suffered *directly* by the organization." 1 Newberg, § 3.34, at 229. In this case, however, Advocacy *expressly disclaims* any injury to itself as an independent entity. Rather, the plaintiffs' live petition and motion to certify the action as a class action aver expressly that "Advocacy brings suit *solely*

in its *representative status* for the benefit of the class." Consequently, *class representation* by Advocacy, may only be authorized on an initial determination of *associational standing. Id.;* 3B Moore and Kennedy, Moore's Federal Practice ¶ 23.04[3] (2d ed. 1987).

To possess associational standing to bring an action, an organizational plaintiff must have *members* who have sustained the legally cognizable injury which forms the basis of the claim. *Warth v. Sedlin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *see generally* Burnham, *Aspirational and Existential Interests of Social Reform Organizations: A New Role for the Ideological Plaintiff,* 20 Harv.C.R.–C. L.L.Rev. 153, 162–168 (1985) (describing the associational standing of an organizational plaintiff as being derivative of the direct standing of its members). Without the requisite standing, a suit by an organizational plaintiff encounters several bars to judicial action—not the least of these are constitutional prohibitions against the judiciary's giving advisory opinions and deciding political questions. *See Texas Industrial Traffic League v. Railroad Commission of Texas,* 628 S.W.2d 187, 191–202 (Tex.App.), rev'd on other grounds, 633 S.W.2d 821 (Tex.1982) (discussing the general doctrine of standing in Texas).

The undisputed evidence establishes that Advocacy is a non-profit corporation formed generally to advocate the interests of mentally ill and developmentally disabled persons. Advocacy introduced no evidence, however, to show that it is comprised of members having those characteristics. Consequently, Advocacy did not show an associational standing permitting it to prosecute the underlying action. It therefore did not show its competency to serve as class representative. *See Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 734 (3rd Cir.1970) ("A plaintiff who is unable to secure standing for himself is certainly not in a position to 'fairly ensure the adequate representation' of those alleged to be similarly situated."), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); *see generally* Note, *Class Standing and the Class Representative,* 94 Harv.L.Rev. 1637 (1981) and Note, *Organizational Representation Suits: Labor Unions May Attack Employment Discrimination Without Having to Meet Rule 23 Requirements,* 53 Ind.L.J. 113 (1977) (both discussing derivative standing precedents in the context of class-action proceedings).[4]

**4.** We are aware of two decisions permitting organizations such as Advocacy to sue in federal court as a representative of a party. *Goldstein v. Coughlin,* 83 F.R.D. 613 (W.D.N.Y.1979); *Naughton v. Bevilacqua,* 458 F.Supp. 610 (D.R.I. 1978), aff'd on other grounds, 605 F.2d 586 (1st Cir.1979). *Goldstein* merely cites *Naughton* as precedent, however; and *Naughton* fails to develop the issue, restricting its discussion to a short conclusory footnote. Neither case involved a claim of *class*-representative status by the organization.

In pertinent part, *Naughton* states:

[L]ike any agency charged with enforcement of statutory provisions, the advocacy agency need not show injury to the agency in order to initiate suit or intervene on behalf of an injured party. The live case or controversy requirement of Art. III is satisfied by injury to Timothy. Congress can charge an agency with representation and protection of the statutory rights of the particularly helpless developmentally disabled. *See Sierra Club v. Morton,* 405 U.S. 727, 732 [92 S.Ct. 1361, 1364]
. . . .

458 F.Supp. at 616, n. 3. The court's reference to *Sierra Club* is, however, questionable authority for the proposition urged.

*Sierra Club* was, of course, a landmark decision in which the Supreme Court held that, absent injury to *itself* or *its members,* the Sierra Club lacked standing to obtain judicial review of administrative action taken by certain federal officials. In view of that holding, the *Naughton* footnote appears quite enigmatic.

On the other hand, the *Naughton* footnote indicates the court viewed the advocacy organization as an *administrative agency of government,* charged with the duty of representing the interests of developmentally disabled persons. We agree that the federal statutes authorizing funding of such organizations do require that they use those funds in furthering the interests of such persons; however, we cannot conceive that those statutes convert a Texas non-profit corporation into a *governmental entity* empowered to litigate the rights of others in State court. In our view, the statutes set out a mechanism to fund organizations which are designed to assist and protect a class of persons, but the "representation" intended by those statutes appears

In holding as we do, we hasten to add that this is not a suit where the class has approved of associational representation by Advocacy. We find no proof whatever that the class members, or anyone empowered to speak for them, have consented to *class* representation by Advocacy. In fact, the record includes testimony which implies that certain class members may view Advocacy as an adversary in the present action.

We are not unmindful of the decision reached by the Texas Supreme Court in *Texas Industrial Traffic League v. Railroad Commission of Texas,* 633 S.W.2d 821 (Tex.1982). In that case, the Supreme Court held that a party's standing to prosecute a suit for judicial review of an administrative order may not be raised on appeal absent a trial court ruling on a "written plea in abatement." *Id.* at 823.[5] In the case at hand, however, the prerequisite of a plea in abatement cannot apply for several reasons.

■ First, we believe the State sufficiently preserved the issue by opposing class representation by Advocacy, on grounds of competency, at all stages of this proceeding. *See Pape Equipment Co. v. I.C.S., Inc.,* 737 S.W.2d 397, 404 (Tex. App.1987, writ ref'd n.r.e.); *Austin Neighborhoods Council, Inc. v. Board of Adjustment of the City of Austin,* 644 S.W.2d 560, 565–66 (Tex.App.1982, writ ref'd n.r.e.). Second, we believe the State could not have waived the issue because

Advocacy has challenged the constitutionality of various state statutes, thereby directly and adversely affecting the public interest "as that interest is declared in the statutes or Constitution of Texas." *Texas Industrial Traffic League,* 633 S.W.2d at 823; *Kircus v. London,* 660 S.W.2d 869, 872 n. 3 (Tex.App.1983, no writ). Third, because Advocacy brings this class-action suit "solely in its representative status," it seeks to litigate only the rights of others, thereby relaxing the need for strict adherence to pleading rules. *See Eye Site, Inc. v. Blackburn,* 750 S.W.2d 274, 276 (Tex. App.1988, writ granted). And fourth, in this interlocutory appeal the issue of standing remains in the case, and we believe the "equities of the situation" require our resolution of the class-action issue under the requirements and reasoning outlined above. *See City of Fort Worth v. Groves,* 746 S.W.2d 907, 913 (Tex.App.1988, no writ); *Develo–Cepts, Inc. v. City of Galveston,* 668 S.W.2d 790, 793 (Tex.App.1984, no writ).

■ Finally, we would in any case find an abuse of discretion in the trial court's order making Advocacy a class representative. A perceived *waiver* of the jurisdictional standing issue, by the Department, cannot in any sense *satisfy* Advocacy's positive procedural burden of proving the typicality and adequacy components of its competency to serve as class representative.

directed at legal counseling, general advocacy, and social services. The statutes do not go so far as to substitute the interests of the protected persons to judgment calls made by the directors of such organizations. *See Pennhurst,* 451 U.S. at 18–22, 101 S.Ct. at 1540–42.

For these reasons, we believe *Naughton* and *Goldstein* are less than persuasive.

For an interesting treatment of a claim of direct standing by an organization like Advocacy, we refer to the district-court and appellate opinions in *Developmental Disabilities Advocacy Center, Inc. v. Melton,* 521 F.Supp. 365 (D.N.H.1981), *vacated and remanded,* 689 F.2d 281 (1st Cir. 1982). The *Melton* case did not involve a request by the organization for class-action representation, but the opinions do illuminate the purposes of such public interest law groups.

5. Traditional understanding has always treated the question of "standing" as raising a question

of *jurisdiction,* while a plea in abatement *concedes jurisdiction* yet argues against its present *exercise* by the court. Consequently, we questioned that essential aspect of the Supreme Court's per curiam ruling in *Texas Industrial Traffic League. See Public Utility Commission of Texas v. J.M. Huber Corp.,* 650 S.W.2d 951, 954–56 (Tex.App.1983, writ ref'd n.r.e.); *see also* 2 McDonald, Texas Civil Practice §§ 7.07–7.16 (rev. ed. 1982). Nevertheless, we have followed the Supreme Court's *Texas Industrial Traffic League* decision in the context of suits for judicial review of the actions of administrative agencies. *Goeke v. Houston Lighting & Power Co.,* 761 S.W.2d 835, 837 n. 1 (Tex.App.1988, writ requested); *City of Houston v. Public Utility Commission of Texas,* 656 S.W.2d 107, 110 n. 1 (Tex.App.1983, writ ref'd n.r.e.); *J.M. Huber Corp.,* 650 S.W.2d at 956.

The record contains no showing that Advocacy suffered the unlawful conduct, attributed to the Department, in a manner similar to that experienced by the class members. By failing to establish that its claims are similar to those of the class, and that they arise under the same legal theory, Advocacy failed as a matter of law to satisfy the prerequisite of typicality. *See* 1 Newberg, § 3.13, at 167; *cf. Vulcan Society of Westchester County v. Fire Department of the City of White Plains*, 82 F.R.D. 379 (S.D.N.Y.1979) (organization of black firemen could not serve as a class representative when the injury it suffered differed from that of the class it sought to represent).

We also think it plain that Advocacy is not an adequate *class* representative in light of one or more probable conflicts with the class shown in the record. The trial court heard testimony that various parents and guardians of persons with mental retardation vigorously opposed *legal* representation by Advocacy.[6] Given the degree of that opposition, which is also reflected in a strongly worded plea in intervention filed in the suit by a group of such parents and guardians, it may be that similar objections have developed with those interested in the rights of persons suffering from mental illness.[7] Nothing in the record suggests that the trial court accounted for such opposition in its determination relative to Advocacy's competency to serve as a class representative.

In addition, the record demonstrates unequivocally that Advocacy claims a unique and dual position of class repre-

sentative *and* attorney of record in the case. Advocacy's attorneys are full-time employees having, apparently, an extraordinary authority over its affairs and operations; and they strongly contend that Advocacy's only purpose is to *advocate on behalf of* mentally ill and developmentally disabled persons. Advocacy's dual status cannot be permitted.

> [T]raditional principles continue to prevent any attorney from acting simultaneously both as the class representative and as the class counsel because, in most situations, he will have a potential conflict of interest between his duty as representative and his economic interest in his attorney fees.

3B Moore and Kennedy, Moore's Federal Practice ¶ 23.07[1.–1], at 23–197 (2d ed. 1987); *see also* 1 Newberg, § 15.22.

In this class-action proceeding for declaratory and injunctive relief, Advocacy has indeed requested recovery of "attorney's fees and costs of suit." We believe the coincidence of this fact, taken with the dual "class attorney" and "class representative" status asserted by Advocacy, runs contrary to the rule announced in *In Re Goldchip Funding Co.*, 61 F.R.D. 592, 595 (M.D.Pa. 1974):

> An attorney who prosecutes a class action with unfettered discretion becomes, in fact, the representative of the class. This is an unacceptable situation because of the possible conflict of interest involved.

For these reasons, we reverse and vacate that part of the district court order direct-

6. In the present case, Advocacy also seeks to maintain a class-action on behalf of all persons in state schools for the mentally retarded. The trial court declined to rule on that issue pending disposition of this appeal.

7. The district court should reconsider these and similar conflicts in determining the Rule 42(b) provision under which the class action will be maintained. This choice may impact profoundly the scope and binding effect of the judgment ultimately rendered by the court. *See* 1 McDonald, Texas Civil Practice, § 3.34.1 (rev. ed. 1981). *See also* Comment, *Voluntary Membership Association Has Standing to Sue Solely in its Capacity as Representative of Its Harmed*

*Members—NCAA v. Califano, 622 F.2d 1382 (10th Cir.1980),* 56 Notre Dame Law. 546 (1981) (discussing the ramifications of voluntary membership in an organizational litigant as opposed to involuntary membership). In the case at hand, "membership" under either circumstance is not shown; rather Advocacy is shown to be funded by the federal government to provide services *on behalf of* a class of persons. 42 U.S.C.A. § 6000 *et seq.*; 42 U.S.C.A. § 10801 *et seq.* We think it important to note that nothing in those statutes gives Advocacy *authority* over any class of persons nor purports to *require* anyone to *accept* any service Advocacy provides.

ing that Advocacy, serve as class representative.

## CONCLUSION

Finding no error as assigned by the defendants with respect to Opal Petty, we affirm the order permitting her to maintain as a class action her suit for declaratory and injunctive relief. We reverse and vacate the order, however, insofar as it allows Advocacy to serve as a class representative. The action may proceed consistent with our opinion.