**RIO GRANDE VALLEY GAS CO., Southern Union Company, Southern Union Gas Company, Mercado Gas Services, Appellants,**

v.

**The CITY OF PHARR, on Behalf of Itself and Other Similarly Situated Entities, Appellees.**

No. 13–96–352–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 30, 1997.

Roberto J. Yzaguirre, Jose E. Chapa, Jr., Yzaguirre & Chapa, McAllen, Eduardo R. Rodriguez, Rodriguez, Colvin & Chaney, Brownsville, Jerry K. Clements, Locke, Purnell, Rain & Harrell, Dallas, Christina Carlson Dodds, Daniel W. Bishop, II, Locke, Purnell, Rain & Harrell, Austin, Thomas F. Loose, Karin B. Torgerson, Kirsten M. Castaneda, Locke, Purnell, Rain & Harrell, Dallas, Lisa D. Powell, Morris Atlas, Atlas & Hall, McAllen, Osborne J. Dykes, III, Fulbright & Jaworski, Houston, Luther H. Soules, III, Soules & Wallace, San Antonio, for appellants.

Vincent L. Marable, III, Wharton, Benjamin L. Hall, III, Elizabeth Bazan-Hawkins, O'Quinn, Kerensky, McAninch & Laminack, Houston, Phil Harris, Weslaco, John M. O'Quinn, Robert R. Johnson, Sherry Scott, O'Quinn, Kerensky & McAninch, Houston, Jennifer Bruch Hogan, Holmon, Hogan, Dubose & Townsend, Houston, for appellees.

Before DORSEY, YANEZ and RODRIGUEZ, JJ.

## OPINION

YANEZ, Justice.

Rio Grande Valley Gas Co., Southern Union Gas Co., *et. al.*[1] bring this interlocutory appeal from an order entered in the 92nd District Court certifying as a class all Texas municipalities (excluding Edinburg and McAllen) that have entered into franchise agreements with RGV or SUG providing for payment of franchise fees based on a percentage of the franchisee's gross receipts. By three points of error, appellants contend the trial court abused its discretion in certifying the class. We affirm.

### Procedural History

The Cities of Edinburg and Pharr, like many other municipalities, executed municipal ordinances which granted to RGV and its successors, lessees, and assigns, the right to use public property to lay its system of pipes and lines for the purposes of distributing, supplying, conveying, and selling natural gas to customers within city limits. In exchange for these rights, RGV was to pay a percentage of its "gross receipts" from all gas sales within the municipalities to each respective municipality. Over thirty municipalities in the Rio Grande Valley executed franchise agreements with RGV containing identical or nearly identical terms.

A disagreement arose with respect to the calculation of the gross receipts because Edinburg discovered that RGV was transporting natural gas for other companies for sale within the city limits, and not including its revenue from such endeavors in its gross

---

1. In addition to the above mentioned parties, Southern Union Company, Southern Union Gas Company, Inc., and Mercado Gas Services, Inc., are among the corporate entities bringing this appeal. Rio Grande Valley Gas Company was merged into Southern Union Gas Co. of Delaware in 1993, and no longer exists as a separate company. For ease of reference, Rio Grande Valley Gas Company will be referred to as "RGV," Southern Union as "SUG," and collectively as "appellants."

receipt calculations used for franchise payments. Edinburg contended this arrangement to transport gas on behalf of transport customers was not authorized under the ordinance granting RGV a franchise.

On August 31, 1995, Edinburg sued appellants and Valero corporate entities[2] for exceeding their franchise rights by "engaging in revenue-generating schemes in their gas operations on public property," and thereby paying a deceptively small franchise fee payment to Edinburg. SUG was named as a party because it has assumed RGV's rights and obligations under the franchise agreements, and allegedly continues to interpret the franchise agreements in the same manner as RGV. Edinburg sued appellants on multiple causes of action, including breach of contract,[3] and sought both damages and declaratory relief. According to Edinburg's pleadings, franchise payments were based on appellants' gross receipts, which were undervalued. By subsequent amended petition filed April 24, 1996, Edinburg sought certification of a class action, with itself as representative of all Texas municipalities which have or have had similar franchise agreements with RGV.

On June 17, 1996, Pharr, which is represented by the same counsel as Edinburg, sought to intervene in Edinburg's class action, incorporating by reference all the allegations and causes of action pleaded by Edinburg. On June 20, 1996, four days before the scheduled hearing for certification of a class in which Edinburg would be class representative, Pharr filed an "Amended Petition in Intervention, Motion to Sever, Request for Class Action, and Request for Jury Trial," by which it sought to sever its claim from the Edinburg suit and have itself certified as class representative.[4]

One of Edinburg and Pharr's key contentions is that their agreements, like those of other class members, allow only the franchisee to sell gas within city limits, and even if the franchisees are allowed to have "transport customers," whatever profits which derive from these "transportation customers" should be, and should have been, included among RGV and SUG's gross receipts. Appellants disagree, and do not believe the franchise agreement warrants the inclusion of transportation customers within the calculation of gross receipts subject to the franchise fee. Pharr seeks to adjudicate the "rights, status, and legal relationship" between municipalities and the defendants "with respect to the withholding of proper municipal fees due and owing" as well as "the scope of authority granted to the defendants in the franchise fee ordinances" on behalf of approximately ninety municipalities with similar agreements.

On June 24, 1996, the trial court held a hearing on Pharr's motion to certify. Prior to the hearing, however, appellants filed a motion to disqualify and/or recuse Judge Homer Salinas, then the presiding judge at the 92nd District Court. The motion was denied as untimely, the court conducted a hearing on the certification issue, and the class now at issue was certified. Appellants brought this interlocutory appeal of Judge Salinas's certification order, arguing that the trial court abused its discretion in certifying a class action in the manner it did.

While this appeal was pending, subsequent motions to "disqualify and/or recuse" Judge Salinas were filed. They were referred to the administrative judge, who appointed Judge Robert Pate to hear the matter. After conducting a hearing, Judge Pate granted the motions. Because an issue arose regarding the validity of Salinas's certification order in light of his removal, appellants then filed a motion to vacate Judge Salinas's order. For reasons set out below, and by agreement of the parties, we issued an order staying this appeal until Judge Westergren, who was appointed to replace Judge Salinas, determined what effect Salinas' removal had, if any, on

---

**2.** Valero Energy Corporation and its subsidiaries have since been dismissed as defendants in this action, and were dismissed as parties to this appeal.

**3.** Other causes of action alleged in the petition included conversion, civil conspiracy, removal of

purpresture, unjust enrichment/quantum meruit, fraud, constructive fraud, negligent misrepresentation, tortious interference with contract, and breach of duty of good faith and fair dealing.

**4.** It contemporaneously filed a "Rule 42 Request to certify a class."

the certification order. Upon filing of Judge Westergren's determination of the issues presented by appellants regarding Judge Salinas's removal, we reinstated this appeal. Appellants have since amended their brief and added a supplemental point of error alleging that the certification order is void because Judge Salinas was without jurisdiction to enter any order. We now address the arguments raised by appellants.

## POINTS ON APPEAL

In their first point of error, appellants argue the certification order is void because the trial court was disqualified at the time it entered the order. By their second point of error, appellants maintain the certification order should be overruled because the trial court abused its discretion and entered the order without (a) first affording appellants due process opportunities to receive proper notice of the certification sought, (b) allowing appellants to be heard in a meaningful manner, and (c) allowing appellants to cross-examine Pharr's city attorney. Finally, appellants contend in their third point that the order should be overruled because appellee did not satisfy the requirements for certification under Texas Rule of Civil Procedure 42.

### Scope and Standard of Review

Our jurisdiction over an appeal from an interlocutory order exists only insofar as it is specifically authorized by statute. *Laurie v. Stabel,* 482 S.W.2d 652, 654 (Tex. Civ.App.—Amarillo 1972, no writ); *Byer v. Dallas Power & Light Co.,* 290 S.W.2d 948, 950 (Tex.Civ.App.—Dallas 1956, no writ); *see Browne v. Bear, Stearns & Co.,* 766 S.W.2d 823, 824 (Tex.App.—Dallas 1989, writ denied). Section 51.014 of the Texas Civil Practice & Remedies Code permits a party to appeal from an interlocutory order that certifies or refuses to certify a class in a suit brought under rule 42 of the Texas Rules of Civil Procedure. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(3) (Vernon 1997); *De Los Santos v. Occidental Chem. Corp.,* 933 S.W.2d 493, 494 (Tex.1996); *Koch Gathering*

*Systems, Inc. v. Harms,* 946 S.W.2d 453, 455 (Tex.App.—Corpus Christi 1997, writ denied). A party may complain of all matters which pertain to the certification decided by an interlocutory order. *American Express Travel Related Servs. Co. v. Walton,* 883 S.W.2d 703, 707 (Tex.App.—Dallas 1994, no writ) (holding that a defendant could complain about notice to class members and class size).

We will reverse the certification order only if the record shows a clear abuse of discretion. *St. Louis Southwestern Ry. Co. v. Voluntary Purchasing Groups, Inc.,* 929 S.W.2d 25, 29–30 (Tex.App.—Texarkana 1996, no writ); *Walton,* 883 S.W.2d at 711. An abuse of discretion is shown if the trial court acts without reference to any guiding principles or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985). A clear failure by a trial court to analyze or apply the law correctly is an abuse of discretion. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992); *St. Louis Southwestern Ry. Co.,* 929 S.W.2d at 30. Further, the reviewing court must view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in favor of that ruling. *Health & Tennis Corp. of Am. v. Jackson,* 928 S.W.2d 583, 587 (Tex.App.—San Antonio 1996, writ dism. w.o.j.); *Vinson v. Texas Commerce Bank—Houston,* 880 S.W.2d 820, 823 (Tex.App.—Dallas 1994, no writ); *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 371–72 (Tex.App.—El Paso 1993, no writ).

### Effect of Judge Salinas' Removal on Certification Order

Appellants' first point concerns the validity of the class certification order based on the removal of Judge Salinas. Appellants contend that, because Judge Salinas was disqualified, he was without jurisdiction from the inception of the case and therefore the certification is void. The validity of the certification order depends on whether Salinas was recused, or disqualified. Although the terms are often used interchangeably,[5] and

---

5. *See, e.g., Gulf Maritime Warehouse Co. v. Towers,* 858 S.W.2d 556, 558–60 (Tex.App.—Beaumont 1993, writ denied); *cf. Buckholts Indep.*

*Sch. Dist. v. Glaser,* 632 S.W.2d 146, 148 (Tex. 1982) (noting that there are two bases for "dis-

indeed were used interchangeably at the onset of this issue in the courts below, they have significant differences. If Judge Salinas had a disqualifying interest in the litigation,[6] he was without jurisdiction to hear the case, and therefore, any order he entered would be considered void. *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 148 (Tex.1982); *McElwee v. McElwee*, 911 S.W.2d 182, 186 (Tex.App.—Houston [1st Dist.] 1995, writ denied). That would not be the case, however, if he was removed under the recusal provisions of Texas Rule of Civil Procedure 18a.

The basis for Judge Salinas's removal from the case stemmed from a concern that his status as a resident of Mercedes, one of the potential class members, could raise doubts as to his impartiality. Because Salinas was alleged to be a property owner in Mercedes, and because Mercedes stood to benefit if the class prevailed in this litigation, movants argued Judge Salinas would ultimately derive benefits from any monies paid to Mercedes by appellants. Such monies, appellants alleged, would be invested in the city's infrastructure and, ultimately, benefit Judge Salinas, whose property tax liability would decrease correspondingly. Judge Pate agreed, and after finding "Judge Homer Salinas has a financial interest in these Proceedings as that term is defined in Rule 18b(4)(d)," which could be substantially affected by the outcome of the litigation, he granted the motion to "recuse and/or disqualify."

After we stayed this appeal, Judge Westergren issued an order whereby he determined that Judge Pate's ruling was an interlocutory order, subject to Westergren's continuing jurisdiction. He then interpreted Judge Pate's order as a recusal, rather than a disqualification. Judge Westergren vacated Judge Pate's order "to the extent that it finds that Judge Salinas had a disqualifying interest in this cause up to the time a class action was certified or that Judge Salinas was in any way disqualified in this action at that time." He left Judge Pate's recusal ruling "undisturbed."

We are not, by the present appeal, reviewing the propriety of either Judge Pate's or Judge Westergren's rulings. We do not have jurisdiction to review the propriety of a ruling on a motion to recuse via interlocutory appeal. *See* TEX.R. CIV. P. 18a(f). Nonetheless, we must determine whether there is a valid order before us, or whether it was entered by a court without jurisdiction due to a disqualifying interest.

Judge Westergren, by his interpretation of Judge Pate's ruling, would leave the certification order intact. We agree with his interpretation of Judge Pate's order. Although Judge Pate granted appellant's motion to "disqualify and/or recuse" and found that Salinas was "disqualified," it is clear that his basis for doing so was Texas Rule of Civil Procedure 18b(4)(d). Under this provision, a judge is *recused* from any case in which he has a "financial interest," which is defined as "ownership of a legal or equitable interest, however small," in the subject matter of the controversy. TEX.R. CIV. P. 18b(2)(e) & 18b(4)(d).[7] Salinas, as a resident of Mercedes, was alleged to be a taxpayer in Mercedes. Because Mercedes may potentially recover up to $20 million in this action, Judge Salinas's property tax liability may be substantially more affected than other judges available to preside over each of the cases. Judge Pate found that "the disqualification and recusal necessitated under the Court's findings are not the fault of Judge Homer Salinas and that the source and circumstances which give rise to the question of

---

qualification": constitutional, under art. V, § 11, and statutory).

6. *See* TEX. CONST. art. V, § 11, which provides that "[n]o judge ... shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be proscribed by law, or when he shall have been counsel in the case."

7. We note that the term "financial interest" only appears in the "Recusal" section of the rule, and nowhere in the "Disqualification" section. The rule further states that "an interest as a taxpayer or utility rate payer, or any similar interest, is not a 'financial interest' unless the outcome of the proceeding could substantially affect the liability of the judge or a person related to him within the third degree more than other judges." TEX.R. CIV. P. 18b(2)(4)(v).

Judge Salinas's impartiality are beyond his volition and control."

While Judge Pate did not segregate a disqualifying interest from an interest sufficient to warrant recusal *per se*, it is clear that the factual basis for removing Judge Salinas did not rise to the level of interest which would invoke constitutional disqualification. It is well-established that an interest held by a judge which is common with that of the public is not disqualifying. *Elliott v. Scott*, 119 Tex. 94, 25 S.W.2d 150, 151 (1930); *City of Pasadena v. State*, 428 S.W.2d 388, 404 (Tex.Civ.App.—Houston [1st Dist.] 1967), *rev'd on other grounds*, 442 S.W.2d 325 (Tex. 1969); *Runyon v. George*, 349 S.W.2d 107, 108 (Tex.Civ.App.—Eastland 1961, writ dism'd). A judge is not disqualified because he has an interest as a taxpayer, even though he might have a possible but uncertain pecuniary interest in the outcome of the suit. *See City of Oak Cliff v. State*, 97 Tex. 391, 393, 79 S.W. 1068, 1069 (1904) and cases cited therein; *see also Nueces County Drainage & Conserv. Dist. No. 2 v. Bevly*, 519 S.W.2d 938, 951–52 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Thompson v. State*, 165 S.W.2d 131, 133 (Tex.Civ.App.—Amarillo 1942, no writ). Taxpayer status has never been deemed a sufficient interest to warrant disqualification. In order to be constitutionally disqualified, a judge must have "so direct an interest in the cause or matter as that the result must necessarily affect him to his personal or pecuniary loss or gain." *Elliott*, 25 S.W.2d at 152 (quoting *City of Oak Cliff*, 97 Tex. at 393, 79 S.W. at 1068–69). Otherwise, he may sit. *Id.* No such direct interest was found by either Judge Pate or Judge Westergren.

We have reviewed the pleadings, evidence, and testimony presented before Judges Salinas, Pate, and Westergren, and conclude that Judge Salinas did not have a constitutionally-based disqualifying interest. Therefore, the certification order is not void and should not be set aside on the basis of Judge Salinas's stated interest in the subject matter of the litigation. Point of error one is overruled.

We now address appellants' other arguments; that Judge Salinas abused his discretion (1) by failing to afford appellants proper and adequate notice or an opportunity to be heard or to cross-examine Pharr's witness at the hearing, in violation of their due process rights, and (2) by certifying the class despite Pharr's inability to meet the numerosity, commonality, typicality, and adequacy requirements under Texas Rule of Civil Procedure 42(a) and (b).

## Facts Relevant to Certification Order

On June 24, 1996, the trial court entertained the certification request. Although Edinburg had originally requested to certify a class, after Pharr's motion was filed and the court severed Edinburg's suit from the potential class action, what transpired was effectively a hearing on Pharr's motion to certify its own class, exclusive of Edinburg. Appellants objected to the expansion of the class from the proposed thirty-seven Rio Grande municipalities, to approximately ninety municipalities statewide. It also objected to the alteration of the nature of the class from a mandatory to an opt-out class. At the conclusion of the hearing, the trial court found that Pharr had satisfied the requirements for certifying a class, and entered an order to that effect on June 24, 1996.

One or more members of a class may sue on behalf of all only if:

(1) the class is so numerous that joinder of all members is impractical,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Tex.R. Civ. P. 42(a). So long as these four requirements are met, plus any of the requirements under rule 42(b), a class action may be maintained. In this case, the trial court found that the requirements of rule 42(b)(4) and 42(c)(1) had been satisfied.[8]

8. Rule 42(b)(4) permits a class action if, in addition to the four other prerequisites, "the court finds that the questions of law or fact common to members of the class predominate over any ques-

■ The trial court is charged with the initial task of identifying the substantive law issues and determining whether the character and nature of the class satisfies the requirements of the class action procedure. *Clements v. League of United Latin Am. Citizens (LULAC)*, 800 S.W.2d 948, 951 (Tex. App.—Corpus Christi 1990, no writ); *National Gypsum Co. v. Kirbyville Indep. Sch. Dist.*, 770 S.W.2d 621, 627 (Tex.App.—Beaumont 1989, writ dism'd w.o.j.). It is not required to weigh the substantive merits of each class member's claim. *Clements*, 800 S.W.2d at 951.

■ We note at the outset that a proponent of a class is not required to make an extensive evidentiary showing in support of the motion for certification. *Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Vinson*, 880 S.W.2d at 823. It is not necessary for plaintiffs to prove a prima facie case of liability to be entitled to class certification. *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 607 (Tex.App.—Texarkana 1995, writ dism'd). Therefore, "no evidence" and "insufficient evidence" standards do not apply to the initial certification under rule 42. *St. Louis Southwestern Ry.*, 929 S.W.2d at 30. To provide such review at this stage would require a determination of the merits of the plaintiff's claims, which is clearly inappropriate. *Id.* In determining whether a class action is appropriate, the trial court is not limited to evidence that would be admissible at trial, but may consider the pleadings and "other material" in the record. *Id.*; *Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Vinson*, 880 S.W.2d at 823; *Dresser Indus. Inc.*, 847 S.W.2d at 376; *Clements*, 800 S.W.2d at 952; *National Gypsum*, 770 S.W.2d at 627; *Life Ins. Co. of Southwest v. Brister*, 722 S.W.2d 764, 772–73 (Tex.App.—

Fort Worth 1986, no writ) (maintainability of a class action may be determined on basis of pleadings, though certification determination should be predicated on more information than petition itself).

■ So long as certification is sought and decided at an early phase of the litigation, before supporting facts have been fully developed, trial courts should favor certifying a class action. *Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Microsoft Corp.*, 914 S.W.2d at 607; *Dresser Indus., Inc.*, 847 S.W.2d at 371; *Clements*, 800 S.W.2d at 952; *Life Ins. Co. of the Southwest*, 722 S.W.2d at 774–75. This is due in part to the fact that the certification order is always subject to later modification if circumstances require it. *Microsoft Corp.*, 914 S.W.2d at 607. Under rule 42(c)(1), the trial court may alter, amend, or withdraw class certification at any time before final judgment, or order the naming of additional parties to insure adequate representation. *Health & Tennis Corp. of Am.*, 928 S.W.2d at 587; *Microsoft Corp.*, 914 S.W.2d at 607; *Dresser Indus., Inc.*, 847 S.W.2d at 371; *Clements*, 800 S.W.2d at 951–52; *See Salvaggio v. Houston Indep. Sch. Dist.*, 709 S.W.2d 306, 309–10 (Tex.App.—Houston [14th Dist.] 1986, writ dism'd); *Life Ins. Co. of the Southwest*, 722 S.W.2d at 774–75.

This litigation derives from a dispute between RGV and its successor SUG and different municipalities concerning the rights, status, and legal relationships under their respective "franchise agreements." Because RGV and SUG use public property to provide their services, they must contract with municipalities for the use of that property. Under these franchise agreements, broadly speaking, appellants are allowed to use public property to supply and distribute natural gas

---

tions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be

encountered in the management of a class action." Tex.R. Civ. P. 42(b)(4).

Rule 42(c)(1) provides as follows: "As soon as practical after the commencement of an action brought as a class action, the court shall, after hearing, determine by order whether it is to be so maintained. This determination may be altered, amended, or withdrawn at any time before final judgment. The court may order the naming of additional parties in order to ensure the adequacy of representation." Tex.R. Civ. P. 42(c)(1).

within the municipalities, and in return they pay a rental fee, or "franchise fee," to the municipalities based on a designated portion of its gross receipts. More than 90 municipalities have some form of this agreement with RGV and SUG. The parties disagree about the rights conferred by the agreement, and in particular, they disagree about which of appellants' revenues are considered "gross receipts" subject to the franchise fee payments.

### (1) Numerosity

 To satisfy the numerosity requirement, the district court must find "the class is so numerous that joinder of all members is impracticable." TEX.R. CIV. P. 42(a)(1). This determination is not based on numbers alone. *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 653 (Tex.App.— Houston [14th Dist.] 1995, writ dism'd w.o.j.). *National Gypsum,* 770 S.W.2d at 624. Rather, the test is whether joinder of all members is impracticable in view of the size of the class and such factors as judicial economy, the nature of the action, geographical locations of class members, and the likelihood that class members would be unable to prosecute individual lawsuits. *Weatherly,* 905 S.W.2d at 653; *National Gypsum,* 770 S.W.2d at 624. There is no mechanical rule for determining when class size reaches that threshold. *Employers Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Comp. Self–Ins. Fund,* 886 S.W.2d 470, 474 (Tex.App.—Austin 1994, dism'd w.o.j). Courts have considered a putative class numbering as few as seven sufficient to comply with the numerosity requirement. *Weaver v. Reagen,* 701 F.Supp. 717 (W.D.Mo.1988), *aff'd,* 886 F.2d 194 (8th Cir.1989) (seven held to fulfill the numerosity requirement under the particular facts of that case); *Chevron U.S.A. Inc. v. Kennedy,* 808 S.W.2d 159, 161 (Tex.App.—El Paso 1991, writ dism'd w.o.j.) (class with maximum of twenty members satisfied numerosity requirement). "Numerosity" is tied to "impracticability" of joinder under the specific circumstances. 3B J. Moore, MOORE'S FEDERAL PRACTICE § 23.05[1] at 138 (1990). Impracticable does not mean impossible. The representatives only need to show that it is extremely difficult or inconvenient to join all the members of the class. *Chevron U.S.A.,* 808 S.W.2d at 161; 7A C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1762 at 159 (1986).

 As defined, the class encompasses all Texas municipalities which have or have had franchise agreements with either RGV or SUG which entitle them to payments based on a percentage of gross receipts from gas sales. Over thirty of the municipalities in the named class are located in the Rio Grande Valley, while the remainder of the municipalities, a clear majority of the total, are located outside south Texas, throughout the state. Because over ninety municipalities are involved, the numerosity element is presumptively satisfied. Based on the distance between class members and the size of the class alone, Pharr has demonstrated that joinder of every putative class member into a single lawsuit would be impractical. Moreover, Pharr presented materials demonstrating the limited size and resources of many of the class members. It was alleged that, due to the limited resources of certain class members, many of their claims would not be pursued without the class action vehicle. Based on the evidence presented, the numerosity requirement is satisfied.

### (2) Commonality

 This requirement is satisfied if the class representative shows that there exists a legal or factual question common to the class. TEX.R. CIV. P. 42(a). "Questions common to the class" means questions that, when answered as to one class member, are answered as to all class members. *Weatherly,* 905 S.W.2d at 648; *Brister,* 722 S.W.2d at 772; *RSR Corp. v. Hayes,* 673 S.W.2d 928, 930 (Tex.App.—Dallas 1984, writ dism'd). The rule does not require that all or even a substantial portion of the legal and factual questions be common to the class. *Microsoft Corp.,* 914 S.W.2d at 611; *Wente v. Georgia-Pac. Corp.,* 712 S.W.2d 253, 255 (Tex.App.— Austin 1986, no writ). "A single common question could provide adequate grounds for a class action." *Microsoft Corp.,* 914 S.W.2d at 611; *see also Wente,* 712 S.W.2d at 255. It is also significant that the common issue

may be one of law or fact; there need not be common issues of law *and* fact. *Wente,* 712 S.W.2d at 255; *see also Dresser Indus.,* 847 S.W.2d at 372 (common issue of law or fact). The commonality requirement is "subsumed under" the more stringent rule 42(b)(4) requirement that common questions of law or fact predominate over questions involving individual members. *See Amchem Prods., Inc. v. Windsor,* — U.S. ——, ——, 117 S.Ct. 2231, 2243, 138 L.Ed.2d 689 (1997) (construing analogous requirements under Federal Rule of Civil Procedure 23). The test to be applied in determining whether common issues predominate over individual issues is whether the court and the parties will concentrate most of their efforts on the common issues or the individual issues. *Health & Tennis Corp. of Am.,* 928 S.W.2d at 590; *Microsoft Corp.,* 914 S.W.2d at 611; *Dresser Indus.,* 847 S.W.2d at 374; *Brister,* 722 S.W.2d at 772. We will discuss the commonality requirement under 42(a)(2) together with the rule 42(b)(4) requirement, in the interests of brevity, and because appellants have not segregated their argument with respect to these provisions.

■ Appellants complain that Pharr did not demonstrate that common issues will predominate. With respect to the other class members from the Rio Grande Valley region, appellants maintain that critical distinctions exist as between Pharr and other municipalities which demonstrate uncommon fact questions. With respect to municipalities located outside the Rio Grande Valley area, appellants maintain that Pharr did not offer any probative evidence demonstrating commonality. Pharr maintains that the predominate issue in the litigation is the legal question of what constitutes "gross receipt" for the purposes of calculating the franchise payments to class members, and because all class members utilize this language, class action is the preferred method of reaching resolution. Also, Pharr argues that a common issue will be whether the agreements are strictly construed against RGV.

With regard to Valley class members, Pharr offered as exhibits the franchise agree-

ments between RGV and nearly thirty municipalities in Hidalgo and Cameron counties. Each one contains similar language with regard to the rights conferred upon the franchise, as well as its obligations concerning payment of a fixed percentage of gas sales. In particular, each agreement provides that RGV will pay, during the life of the grant, either two or four percent of its gross income from gas sold and delivered in the city. Because Pharr's agreement contains a provision common to that of the other class members, its interest in determining exactly what is encompassed by the term "gross income" is common to the class. In particular, Pharr seeks to determine whether revenues received for transporting other companies' gas for sale within the city is encompassed by the term.

Appellants focus on the differences between the municipalities which, they contend, distinguish their circumstances in material ways and destroy commonality. Seven municipalities serviced by SUG do not have franchise agreements at all (not mentioned), and of those that do, appellants cite the following distinguishing factors:

— only eleven of thirty-six municipalities even have transportation customers within the city

— four municipalities had "most favored nation" clauses [9]

— twenty had "duty to serve clauses" for commercial/industrial customers

— some have different notification for renewal periods

Moreover, because the primary issue in the case involves the interpretation of an ambiguous clause in each of the franchise agreements, appellants contend that parol evidence is necessary to interpret the meaning of the clause, and each contract will be dependant upon different parol evidence.

Clearly, those municipalities which do not have, or never have had, franchise agreements with either RGV or SUG of the sort described in the certification order are not part of the class, and therefore are of no concern on this issue. With regard to the

---

**9.** "Most favored nation" provisions entitle the franchiser to a percentage of gross receipts equal

to that of the highest percentage of any other municipality.

distinctive provisions amongst the municipalities, they do not undermine the commonalty requirement either. The "most favored nation" provisions distinguish the municipalities only in percentage of gross receipts payable; they receive either two percent or four percent of gross receipts from gas sales. They do not alter the methodology utilized by appellants in calculating their gross receipts. Because the difference in the percentages recoverable are only germane to damages or recoveries which the parties may be entitled to, they will not be enough to defeat class certification. *Health & Tennis Corp. of Am.,* 928 S.W.2d at 588 (differences in calculation of damages does not preclude class certification); *see also Angeles/ Quinoco Sec. Corp. v. Collison,* 841 S.W.2d 511, 516 (Tex.App.—Houston [14th Dist.] 1992, no writ). Similarly, distinctions between renewal periods and "duty to serve" clauses do not affect the interpretation of gross receipts, or the methodology used in their calculation.

With respect to non-Valley municipalities, Pharr presented (1) SUG's 1994 annual report, which identifies cities in which SUG distributes gas, (2) SUG tax accountant John O'Gorman's deposition, addressing SUG's common procedure for calculating franchise tax payments for every city (by consulting tariff and franchise agreements), (3) a 1990 census for Population and Housing, and (4) a Texas map. Appellants contend that none of the exhibits contain any factual support for inclusion of municipalities outside the Rio Grande Valley area. According to appellants, there was no evidence that any questions, if answered as to Pharr, would be answered as to all potential class members. In fact, appellants argue, the court was informed of significant differences with respect to the definitions of gross revenue and whether transportation revenue is included.

█ Although Pharr sought certification on numerous causes of action, the trial court certified the class on two narrow grounds: the breach of contract cause of action and for declaratory relief. Pharr demonstrated that approximately ninety-three municipalities have or have had franchise agreements with either RGV or SUG, and that each agreement provided for a payment based on a percentage of gross income received from gas sales within that particular municipality. Pharr has alleged that appellants breached their franchise agreement by undervaluing their gross receipts, and therefore underpaying it. In particular, Pharr has alleged that, with respect to it, RGV excluded fees for transporting gas to transportation customers from calculations of "gross income derived from all gas sales." The commonality requirement is generally considered satisfied where (1) many members of the class are subject to the same [misrepresentation or omissions] by reason of common documents, or (2) the defendant is alleged to have engaged in a common course of conduct. *Weatherly,* 905 S.W.2d at 651 (citing *Adams v. Reagan,* 791 S.W.2d 284, 289 (Tex.App.—Fort Worth 1990, no writ)).

Based on the material presented to the court, the franchise fee clause is common in over ninety agreements. Pharr's interest in clarifying what revenues are encompassed within the receipts subject to the franchise fees is common to each and every city. In particular, the declaratory relief aspect of the lawsuit transcends the particularities of Pharr's circumstances and applies to all class members. If appellants are able to demonstrate that there are significant distinctions between Pharr's interest and those of other class members, they may always move to modify the class, or seek decertification altogether. *See* TEX.R. CIV. P. 42(c)(1); *Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836, 843–44 (Tex.App.—Houston [14th Dist.] 1996, no writ). Pharr has demonstrated at this early stage that its claims are common to all municipalities.

### (3) Typicality

█ In order to satisfy the typicality requirement, the class representative must possess the same interests as the class. *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896–97, 52 L.Ed.2d 453 (1977). The requirement is satisfied when the class representative demonstrates that its claims are substantially similar in its essential characteristics as those of the class, *Chevron,* 808 S.W.2d at 162, although they need not be identical or

"perfectly coextensive." *Health & Tennis Corp. of Am.,* 928 S.W.2d at 588; *Microsoft Corp.,* 914 S.W.2d at 613; *Cedar Crest Funeral Home, Inc. v. Lashley,* 889 S.W.2d 325, 331 (Tex.App.—Dallas 1993, no writ); *Wiggins v. Enserch Exploration, Inc.,* 743 S.W.2d 332, 334-35 (Tex.App.—Dallas 1987, writ dism'd w.o.j.). The claims must arise from the same event or course of conduct and must be based on the same legal theory. *Microsoft Corp.,* 914 S.W.2d at 613.

■ Pharr demonstrated its interest in resolving the language contained in its franchise agreement is similar to that of every other city in the purported class. The trial court was presented with franchise agreements from almost thirty municipalities, each containing clauses identical or substantially similar to that of Pharr. Because each city has similar agreements with its franchisees, and because there is evidence which demonstrates that RGV and SUG used the same calculations for determining its gross receipts payable to the municipalities, Pharr's position is demonstrably similar to that of the other class members. Its interest is in clarifying the income subject to the franchise payments.

Appellants cite four factors which they consider demonstrative of a lack of typicality:

1) only a limited number of municipalities within the purported class have intra-city transportation customers, as does Pharr

2) the terms of Pharr's agreement are not the same as other franchise agreements

3) the franchise agreements are admittedly ambiguous, and therefore require parol evidence to help interpret them, the circumstances of which will differ with respect to each class member, and

4) there exist unique and peculiar defenses which will be a major focus in the litigation

As we alluded to above, we have reviewed the ordinances which were presented by Pharr from most municipalities and do not find them to be significantly distinct from each other with respect to the matters presented in this action. Typicality is not destroyed on the basis that Pharr has transportation customers whereas other municipalities do not. The lawsuit seeks declaratory relief to resolve disputes regarding the rights and obligations conferred by the franchise agreements. One of those questions is whether RGV or SUG had or currently has the right to transport other companies' gas for delivery within the respective municipalities, then exclude the revenues received from such customers from its calculations of receipts subject to the franchise fees. The resolution of this issue with respect to Pharr will also answer the question with respect to the other class members as well.

■ The certification of a class action will not be undermined *per se* because of distinctions with respect to the extent of a class representative's damages as compared to other class members, or distinctions with respect to defenses available against the class representative and other class members. Were the trial court to scrutinize the particular factual circumstances of each individual class member before being allowed to certify a class, it would essentially be reviewing the merits of each class member's case and making a prima facie determination regarding its merits. This is not the proper inquiry at the certification stage.

### (4) Adequate representation

■ A class representative must fairly and adequately represent the interests of the class. TEX.R. CIV. P. 42(a); *Weatherly,* 905 S.W.2d at 651; *Dresser Indus.,* 847 S.W.2d at 373. In determining whether a representative is adequate to protect the interests of the class, the trial court must consider the zeal and competence of class counsel and the "willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Reserve Life Ins. Co.,* 917 S.W.2d at 844; *Adams,* 791 S.W.2d at 291. The representative must demonstrate that, through its attorney, it will vigorously prosecute the class claims and assure the court that there is no antagonism between the representative and the class members. *Health & Tennis Corp. of Am.,* 928 S.W.2d at 589; *see also Weatherly,* 905 S.W.2d at 651; *Dresser Indus.,* 847 S.W.2d at 373; *Wiggins,* 743 S.W.2d at 335. Only a

conflict that goes to the very subject matter of the litigation will defeat a party's representative status. *Health & Tennis Corp. of Am.*, 928 S.W.2d at 589; *Microsoft Corp.*, 914 S.W.2d at 614; *accord Dresser Indus.*, 847 S.W.2d at 373; *Adams*, 791 S.W.2d at 291. The adequacy of representation is a fact question to be determined by the trial court based on the circumstances of each case. *Microsoft Corp.*, 914 S.W.2d at 614; *Dresser Indus.*, 847 S.W.2d at 373.

▮ Appellants contend that, based on the conduct of the class representative prior to the certification, the court should have recognized that the class member's counsel is "inexcusably" willing to place its interest before those of the class. Appellants have referred this Court to various procedural machinations prior to the certification hearing which, according to appellants, created confusion amongst the defendants as well as the trial court. In particular, appellants refer to the fact that Pharr had initially sued appellants in its own capacity, then non-suited them after appellants moved to transfer venue to Travis County, only to intervene subsequently in the Edinburg action, then move to sever its claims from Edinburg's.

With respect to the adequacy of the counsel representing the class, Pharr presented the dossiers of the attorneys who would represent the class, including proof that they have successfully represented class members in other class action lawsuits. Class counsel presented the court with hundreds of pages of documents to demonstrate the propriety of certifying a class action, including, but not limited to nearly thirty franchise agreements, annual budgets from numerous municipalities, deposition excerpts from SUG's agents, and accounting records from RGV and SUG. The trial court was in a better position than this Court to judge the adequacy of the representation provided at the certification hearing, and we will not second-guess its assessment in that regard, particularly on the basis of prior procedural machinations which may or may not have been executed for strategic purposes.

Appellants also complain that the class representative has failed to demonstrate a lack of antagonism between itself and other putative class members. With respect to the adequacy of Pharr as class representative, Pharr's own representative, Nereyda MoralesMartinez, testified at the hearing that Pharr was committed to going forward with the case and "do whatever needs to be done to carry forth the case." There was no material presented to the court which suggested the existence of any animosity between Pharr and other class members which might undermine the litigation. The fact that some municipalities have expressed a desire not to be included in the class does not, by itself, illustrate animosity *per se*. Appellants had an opportunity to present material illustrating the animosity it alleges exists between class members, but they did not. Notwithstanding appellants' alleged surprise leading up to the certification, they did know that Pharr had sought certification as a class representative, whether in the Edinburg suit, or in its own suit. We conclude Pharr presented sufficient material to demonstrate, at this early phase of litigation, that it is an adequate representative of the class.

Appellants' third point of error is overruled.

By their second point, appellants raise a due process argument: the certification order should be reversed because it was rendered without affording appellants proper notice, a meaningful opportunity to be heard, or an opportunity to cross-examine. They contend they did not receive timely notice of Pharr's motion to certify a class action because Pharr filed the untimely motion four days before the certification hearing was set to occur, by which it sought to significantly alter the size and characteristics of the class. Because appellants did not have adequate notice of Pharr's intentions, appellants contend that they could not prepare a response and adequately formulate their opposition to certification. Furthermore, appellants contend that, during the course of the hearing, the trial court abused its discretion by not allowing them to cross-examine Pharr's city attorney regarding her testimony about its capacity to adequately represent the class. Consequently, they allege they were denied their due process right to a meaningful hearing.

We note initially that, a class certification order is not a final determination which settles rights or deprives anyone of property. Rather, it is considered merely a procedural tool, albeit one which the supreme court has indicated is subject to abuse. *See General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 953 (Tex.1996). Prior to 1977, the certification of a class did not necessarily afford the defendant opposing the class action the opportunity to be heard on that matter. Before rule 42 was amended in 1977, the party desiring a class action was only required to plead in the original petition that the action fit in one of the categories contained in rule 42. 2 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE, § 13.01[1][a] (1997); *Duncan v. Dripping Springs Indep. Sch. Dist.*, 612 S.W.2d 644, 647 (Tex.Civ.App.—Austin 1981, no writ). It is noteworthy that, until 1977, class certification was considered as such an insignificant procedural step that it could be made without even the necessity of a hearing. Since 1977, however, the party seeking certification must file appropriate pleadings, request a hearing, and offer material satisfying each of the elements at a hearing as soon as is practical after the petition is filed. TEX.R. CIV. P. 42(c)(1); *Mahoney v. Cupp*, 638 S.W.2d 257, 260 (Tex.App.—Waco 1982, no writ); *Duncan*, 612 S.W.2d at 647. In addition to the rules governing class certification, rule 21 provides that, whenever a party files a motion which seeks a court order, all parties are entitled to three days notice (six days if sent by mail) before the hearing. TEX.R. CIV. P. 21. Therefore, under the current rules, a party opposing certification would not only be entitled to notice of the hearing but also provided an opportunity to contest it, although the extent to which a party opposing certification may present "material" at a certification hearing is not specified in the rules.

Appellants' complaint is as follows: while they were preparing to contest Edinburg's certification as class representative at a hearing scheduled for June 24, 1996, Pharr filed a motion with the court to sever its claims from Edinburg's, to certify a voluntary class action with itself as class representative and to expand the scope of the class to all municipalities in the State who had a similar agreement, rather than just Rio Grande Valley municipalities. Appellants contend they did not receive notice of this alteration until the day of the scheduled hearing. Despite appellants' objections to severing Pharr's cause from Edinburg's and proceeding with the certification of this "new" class, the court nonetheless conducted a hearing and certified this action.

Appellants cannot complain about Pharr's failure to comply with rule 21 of the Texas Rules of Civil Procedure because they did not raise this complaint to the trial court. When the matter of notice was raised by Valero's attorneys, it was in the context of the motion to sever Pharr's case from Edinburg's. Counsel for SUG concurred in Valero's objection to the severance, but did not state rule 21 as a basis for its objections. Moreover, after the severance was granted by the trial court and a hearing on the certification commenced, SUG restated its objection based on its surprise that Pharr would seek to be the representative of the class rather than Edinburg. It never mentioned rule 21 in its objection, nor referred to appellees' failure to notify them as required by the rules. In order to preserve a point for review, a party must state the grounds for the ruling sought with sufficient specificity to make the court aware of the complaint. TEX.R.APP. P. 33.2. Appellants did not do this, and therefore they did not preserve this aspect of their complaint.

The Texas Supreme Court has stated that the prevailing purpose of rule 42 is to provide notice to *class members*, but that the law generally requires that persons who might be bound by a court's judgment are entitled to notice of the lawsuit and an opportunity for hearing. *Bloyed*, 916 S.W.2d at 953 (citing *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex.1983)). Ordinarily, when the issue of notice is raised, it pertains to the sufficiency of the notice provided to potential class members. In this case, however, the defendants complain they were not provided with proper notice of the class representative or the scope of the class before the certification hearing was held. At least one court has explained that due process

under the federal and Texas constitutions require the giving of notice and an opportunity to be heard to the opposing party on the question of certification. *Mahoney*, 638 S.W.2d at 260. One commentator has suggested that "the notice is required to inform the opposing party of the nature of the hearing, *i.e.*, that the hearing is to include the question of class certification." DORSANEO, TEX. LITIG. GUIDE § 13.06[2][a].

The question before us, then, is whether appellants' right to due process was violated when they had notice that a certification hearing is pending, but were neither fully apprised of the scope of the proposed class, nor aware of the party seeking to be the class representative more than four days before the hearing.

Appellants were clearly aware, as early as May 22,1996, that Edinburg was seeking certification of a class of all Texas municipalities who have or have had franchise agreements with RGV. They were also apprised at that time of the particular aspect of the agreement which formed the basis of the dispute: the calculation of franchise fees deriving from gross receipts of gas sales within the respective municipalities. More precisely, they were apprised of the particular contention common to all of the proposed class members: that appellants were not authorized to use the rights and privileges conferred by the franchise ordinances for its "private natural gas operations" to the detriment of the respective municipalities. The essence of the allegations against appellants and the basis for certifying a class did not change by the substitution of Pharr as class representative instead of Edinburg.

On June 20, 1996, four days before the hearing, appellants were apprised of certain "alterations" of the sought-after class. In particular, Pharr desired to sever its claims from Edinburg. It sought designation of the same class that Edinburg had, although the class of municipalities expanded beyond the Rio Grande Valley to encompass all munici-

palities statewide who had such agreements with RGV and/or SUG. The nature of the allegations remained the same, however.

Another significant difference is that Pharr sought an opt-out class, rather than a mandatory class. We held in *De Los Santos v. Occidental Chem. Corp.*, 925 S.W.2d 62, 65 (Tex.App.—Corpus Christi 1996), *reversed*, 933 S.W.2d 493 (Tex.1996), that, aside from "a slight difference" in notification to unnamed members of the class and their ability to opt-out, modifying a class from opt-out to mandatory does not effect the underlying nature of the lawsuit. Consequently, we held that the trial court's order modifying a class certification in this manner was not such an order as could be interlocutorily appealed under section 51.014 of the civil practice and remedies code. *Id.* The Supreme Court reversed us, however, and stated that such modification "does not simply enlarge its membership; it alters the fundamental nature of the class." *De Los Santos v. Occidental Chem. Corp.*, 933 S.W.2d 493, 494 (Tex.1996).

The issue in the instant case is not whether appeal is available, but whether the certification of the class was proper, based on the notice provided to appellants. Notwithstanding the significance of the difference between a mandatory or opt-out class, appellants have not explained how Pharr's "altering" of the class adversely affected appellants, or how it could adversely affect any individual class members.[10] Moreover, appellants have not offered any explanation as to whether, or how, their preparation for the certification hearing would have been altered had they been afforded more notice that Pharr sought certification of an opt-out class.

Certification of a class is not final, rights are not adjudicated, and post-verdict appeal may be utilized to redress due process claims on an appeal from a trial on the merits. Appellants have not demonstrated how additional notice would have altered the particu-

10. If fact, certifying a class as a opt-out arguably affords greater protection to class members, as each one may, upon receipt of notice of the class, choose to opt-out of the class and thereby not be bound by a subsequent judgment, whereas in a mandatory class, a person seeking to resist inclu-

sion in the class must actually appear and challenge the court's determinations as to certification, and will be bound by the judgment, should the trial court determine that person (or, in this case, municipality) is a class member. *See* TEX.R. CIV. P. 42(c)(2)-(3).

lars of its opposition to class certification, whether the representative be Edinburg or Pharr. We hold that, in the limited context of this interlocutory appeal, we must only determine whether appellants had notice that a class action certification hearing was pending, and whether they were allowed to participate and voice their opposition to such certification at the hearing determining the issue. Appellants were afforded those opportunities, and we will not reverse a ruling on the basis of slight variations between the definition of the class originally proposed, the class proposed days before the hearing, and the class ultimately defined by the court order after the necessary hearing.

Appellants also complain that they were not allowed to cross-examine Pharr's attorney when she explained to the court that Pharr was committed to pursuing the case vigorously. Appellants sought to "cross-examine" her, but the trial court denied them the opportunity. Consequently, appellants contend, they were not able to challenge Morales–Martinez's conclusory statements regarding Pharr's willingness to vigorously pursue the litigation, or to inquire about any antagonism between it and other class members.

In ordinary circumstances guided by the rules of evidence, the scope and extent of cross-examination of a witness is a matter that lies largely within the discretion of the trial court. *Southern Pac. Transp. Co. v. Peralez*, 546 S.W.2d 88, 96 (Tex.Civ.App.— Corpus Christi 1976, writ ref'd n.r.e.). As we have already indicated, the determination to certify a class, being procedural in nature, can be rendered on "material" which does not constitute "evidence," and may be based, at least in part, on the pleadings. *See Employers Cas. Co.*, 886 S.W.2d at 476. Therefore, application of ordinary evidentiary standards and rules of evidence to a certification hearing is inappropriate.[11] *See Ei-*

*sen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) (stating that a class action hearing "of necessity ... is not accompanied by the traditional rules and procedures applicable to civil trials."). The purpose of the hearing is for the district court to satisfy itself that the claims of the absent class members can be aggregated with those of the class representatives. *Employers Cas. Co.*, 886 S.W.2d at 476. Its purpose is not, as appellants have suggested, for the district court to resolve disputed issues of fact, or to focus on the characteristics of the class opponents.

In this case, Morales–Martinez was never sworn and never took the stand as a witness. Rather, she announced herself in the courtroom and explained that Pharr was committed to pursuing and actively participating in the litigation. After appellants sought to cross-examine her, the court noted that her unsworn testimony was not "evidence." It is clear that Morales–Martinez's testimony, although not considered "evidence" by the court, was offered as "material" support for certification; *i.e.* it was offered to satisfy the court that Pharr would zealously represent the interest of the class members. As such, appellants' ability to elicit from her any facts which would undermine certification would appear critical, if indeed those facts did exist. Appellants did not contend at the hearing, nor do they contend on appeal, however, that there is any tangible proof of animosity between Pharr and other class-members, nor have they even alleged with any particularity why Pharr would not be an adequate representative. Because the trial court was not provided with such reasons at the certification hearing, we will defer to the trial court's wide discretion in determining generally how hearings are to be conducted and the scope of cross-examination that is allowed, if at all. In the context of a certification hearing, which is not guided by the rules of evidence

11. One of our sister courts has acknowledged that, in the context of a class certification hearing, a party is entitled to cross-examine a class representative if it is calculated to elicit relevant testimony. *See Life Ins. Co. of the Southwest*, 722 S.W.2d 764, 776–77 (Tex.App.—Fort Worth 1986, no writ). In that case, the reviewing court held that the trial court erred in not allowing to class opponent to cross-examine a certification witness, but it did not reverse the certification order because the error was not shown to be harmful. We decline to follow the approach of the our sister court, however, because, in reaching its decision, however, it relied on the rules of evidence, which we consider inapposite to a certification hearing. *Id.*

and is not dependant upon clear burdens of proof, we cannot say that a court abuses its discretion in not allowing a party opposing certification to "cross-examine" the class proponent's attorney. Point of error two is overruled.

For the reasons stated, we find that the trial court did not abuse its discretion in certifying the class action. The certification order is affirmed.