NUMBER 13-99-199-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


NISSAN MOTOR COMPANY, LTD. D/B/A

NISSAN MOTOR CORPORATION IN USA, Appellant,


v.



BECKY FRY, LOIS BURKE, AND ALBERTANO

AGUILERA, ON BEHALF OF THEMSELVES AND

OTHERS SIMILARLY SITUATED, Appellees.

____________________________________________________________________


On appeal from the 138th District Court of Cameron

County, Texas.

____________________________________________________________________


OPINION ON MOTION FOR REHEARING



Before Justices Dorsey, Hinojosa, and Chavez


Opinion by Justice Hinojosa



 We issued our original opinion in this case on May 25, 2000. 
Appellant, Nissan Motor Company, Ltd. d/b/a Nissan Motor Corporation
in USA, subsequently filed a motion for rehearing, urging us to
reconsider our opinion in light of recent cases from the Texas Supreme
Court. We grant Nissan's motion for rehearing, withdraw our opinion
of May 25, 2000, and substitute the following as the opinion of this
Court.

 This is an interlocutory appeal from an order granting class
certification.(1) Nissan contends the trial court erred in certifying the
class. We remand this case to the trial court for further proceedings
consistent with this opinion.

1. Background


 Appellees sued Nissan for economic damages(2) arising out of
alleged defects in certain two-point motorized safety belt systems
installed in Nissan vehicles, and requested class certification. Appellees
allege the seat belt system is unfit for the ordinary purpose for which it
is intended, is defective and inadequate, and violates the implied
warranty of merchantability. Specifically, they allege the system is
unreasonably dangerous and defective because it lacks adequate
warnings that the separate manual lap belt must be used to avoid injury
in an accident. Appellees claim that unless the lap belt is properly
engaged, the system (1) will not perform its intended function of
protecting passengers from injury in a collision and (2) can itself cause
serious injury to the passenger it is supposed to protect. Appellees
further claim that the snugness of the automatic shoulder portion of the
seat belt system creates an express warranty that the user is safely
restrained without manually engaging the lap belt portion, leading to a
sense of false security, and that the accompanying warnings and
instructions are inadequate to overcome this problem.

 Appellees pleaded various causes of action against Nissan,
including: 

(1) breach of the implied warranty of merchantability; and

(2) violations of the Texas Deceptive Trade Practices --
Consumer Protection Act ("DTPA"), and Tex. Bus. &
Comm. Code Ann. §§ 17.01, 17.46, 17.50 (Vernon
1987):


 (a) breach of express warranties pursuant to section
17.50(a) of the DTPA;(3)


 (b) breach of implied warranties pursuant to section
17.50(a) of the DTPA;


 (c) by using false, misleading and deceptive acts or
practices as defined in Sections 17.50 and 17.46
of the DTPA in the following ways:


 (i) in causing confusion of or
misunderstanding as to the source,
sponsorship, approval or certification of
goods or services in violation of section
17.46(b)(2) of the DTPA;


 (ii) in representing that goods or services have
sponsorship, approval, characteristics,
ingredients, uses, benefits, or qualities
which they do not have, in violation of
section 17.46(b)(5) of the DTPA;


 (iii) in representing that goods or services are of
a particular standard, quality or grade, or
that goods are of a particular style or model,
if they are of another, in violation of section
17.46(b)(12) of the DTPA; and 


 (iv) in representing that a guarantee or warranty
can involve rights, or remedies, which it
does not have or involve, in violation of
section 17.46(b)(19) of the DTPA.


 Appellees seek monetary compensation for all actual, special, and
consequential damages and pecuniary losses including, but not limited
to, the cost to repair each vehicle and/or replace the defective part, the
cost of alternative transportation during the time necessary to repair
each vehicle, and the value of the loss of use of each vehicle during the
time necessary to repair each vehicle.

 The trial court found that appellees' claims are based on an alleged
common course of conduct of manufacturing and selling a defective
product, which was allegedly marketed through a common course of
similar misrepresentation, and ordered certification of a class consisting
of "all residents in the State of Texas who own a Nissan vehicle
equipped with a two-point passive restraint system equipped with a
separate manual lap belt." The evidence showed this system was
installed in various Nissan vehicles manufactured from 1987 through
1995, and that there are some 153,886 of these vehicles currently
registered in Texas. 

2. Jurisdiction


 A party may complain of all matters pertaining to a class action
certification by interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(3) (Vernon Supp. 2000); Central Power & Light Co. v. City of
San Juan, 962 S.W.2d 602, 607 (Tex. App.--Corpus Christi 1998, pet.
dism'd w.o.j.). 

3. Standard of Review


 It is well established that a trial court has broad discretion in
determining whether to grant or deny class certification. Entex v. City
of Pearland, 990 S.W.2d 904, 909 (Tex. App.--Houston [14th Dist.]
1999, no pet.); Union Pac. Resources Co. v. Chilek, 966 S.W.2d 117,
120 (Tex. App.--Austin 1998, pet. dism'd w.o.j.). A class certification
order will be reversed only if the record shows a clear abuse of
discretion. General Motors v. Bloyed, 916 S.W.2d 949, 955 (Tex.
1996); FirstCollect, Inc. v. Armstrong, 976 S.W.2d 294, 298 (Tex.
App.--Corpus Christi 1998, pet. dism'd w.o.j.); Chilek, 966 S.W.2d at
120; Central Power & Light, 962 S.W.2d at 607. A trial court abuses its
discretion if it acts arbitrarily, unreasonably or without reference to any
guiding principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 242 (Tex. 1985); Entex, 990 S.W.2d at 909; FirstCollect, 976
S.W.2d at 298. 

 A trial court also abuses its discretion when it fails to properly
apply the law to undisputed facts, or when its ruling is based on factual
assertions not supported by material in the record. Texas Commerce
Bank Nat'l Ass'n v. Wood, 994 S.W.2d 796, 801 (Tex. App.--Corpus
Christi 1999, pet. dism'd); Hi Lo Auto Supply, L.P. v. Beresky, 986
S.W.2d 382, 386 (Tex. App.--Beaumont 1999, writ mand. filed). On
appeal, the reviewing court must view the evidence in the light most
favorable to the trial court's ruling and indulge every presumption in
favor of that ruling. Wood, 994 S.W.2d at 801; Entex, 990 S.W.2d at
908; FirstCollect, 976 S.W.2d at 299. In applying this standard, the
reviewing court must defer to the trial court's factual determinations, so
long as they are properly supported by the record, while reviewing its
legal determinations de novo. Entex, 990 S.W.2d at 909; Remington
Arms Co., Inc. v. Luna, 966 S.W.2d 641, 643 (Tex. App.--San Antonio
1998, pet. denied). 

4. General Requirements for Class Certification


 Class action suits furnish an efficient means for numerous
claimants with a common complaint to obtain a remedy where it is not
economically feasible to obtain relief within the traditional framework of
a multiplicity of small individual suits for damages. Bloyed, 916 S.W.2d
at 952-53 (citing Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339
(1980)). Class actions also facilitate the spreading of litigation costs
among numerous litigants with similar claims. Bloyed, 916 S.W.2d at
952-53 (citing U. S. Parole Comm'n v. Geraghty, 445 U.S. 388, 403
(1980)). However, even though it is an efficient device, there is no right
to litigate a claim as a class action; rule 42 provides only that the court
may certify a class action if the plaintiff satisfies the requirements of the
rule. Ford Motor Co. v. Sheldon, 2000 Tex. LEXIS 42, *20 (May 11,
2000) (citing Weatherly Deloitte & Touche, 905 S.W.2d 642, 647 (Tex.
App.--Houston [14th Dist.] 1995, writ dism'd w.o.j.), mand. denied,
951 S.W.2d 394 (Tex. 1997)). The class action format must not unduly
restrict a party from presenting viable claims or defenses without that
party's consent. Southwestern Refining Co. v. Bernal, 2000 Tex. LEXIS
50 at *26 (May 11, 2000) (citing Tex. R. Civ. P. 815 and Tex. Gov't Code
§ 22.004(a)(Vernon Supp. 2000) (state procedural rules may not
abridge, enlarge, or modify the substantive rights of a litigant)). The
class action device is not meant to alter the parties' burden of proof,
right to a jury trial, or the substantive prerequisites to recovery. Bernal,
2000 Tex. LEXIS at *31.

 A member of a class may sue or be sued as a representative party
of the class only if all of the following requirements of rule 42(a) are
satisfied:

(1) the class is so numerous that joinder of all members is
impracticable;


(2) there are questions of law or fact common to the class;


(3) the claims or defenses of the representative parties are
typical of the claims or defenses of the class; and


(4) the representative parties will fairly and adequately
protect the interests of the class. 


Tex. R. Civ. P. 42(a). Additionally, at least one of the enumerated
requirements set forth in rule 42(b) must be met. In this case, appellees
pleaded rule 42(b)(4), which provides as follows:

(b) Class Actions Maintainable. An action may be
maintained as a class action if the prerequisites of
subdivision (a) are satisfied, and in addition:


* * * * *



(4) the court finds that questions of law or fact common to
the members of the class predominate over any questions
affecting only individual members, and that a class action is
superior to other available methods for the fair and efficient
adjudication of the controversy. The matters pertinent to the
findings include: (A) the interest of members of the class in
individually controlling the prosecution or defense of
separate actions; (B) the extent and nature of any litigation
concerning the controversy already commenced by or
against members of the class; (C) the desirability or
undesirability of concentrating the litigation of the claims in
the particular forum; (D) the difficulties likely to be
encountered in the management of a class action.


Tex. R. Civ. P. 42(b)(4).


 The trial court is charged with the initial task of identifying the
substantive law issues and determining whether the character and
nature of the class satisfies the requirements of class action. 
FirstCollect, 976 S.W.2d at 299; Central Power & Light, 962 S.W.2d at
627; Rio Grande Valley Gas Co. v. City of Pharr, 962 S.W.2d 631, 640
(Tex. App.--Corpus Christi 1997, pet. dism'd). The plaintiffs' right to
proceed as a class may be established by materials which need not
meet all the requirements of admissibility at trial. Wood, 994 S.W.2d
at 801; Health & Tennis Corp. of Am. v. Jackson, 928 S.W.2d 583, 587
(Tex. App.--San Antonio 1996, writ dism'd w.o.j.); Vinson v. Texas
Commerce Nat'l Bank, 880 S.W.2d 820 (Tex. App.--Dallas 1994, no
writ); Dresser Indus., Inc. v. Snell, 847 S.W.2d 367, 376 (Tex. App.--El
Paso 1993, no writ).

5. Typicality

 The trial court found that:

the claims and defense of the representative parties are
typical of the claims or defenses of the class. "Typicality"
requires that a class representative possess the same
interest and possess the same injury as the members of the
class. While the named Plaintiffs need not suffer precisely
the same injury as the other class members, there must be
a nexus between the injuries suffered by the class
representative and those suffered by other class members. 
Here, Plaintiffs' claims share virtually identical factual and
legal foundations with the claims of the class members. 
They have all purchased the same allegedly defective
product and have alleged to have sustained damages
therefrom. In addition, virtually each class member seeks
virtually identical damages.


The court further found that the named plaintiffs would adequately
protect the interests of the class, that the named plaintiffs' interests
were not antagonistic to those of the other class members, and that
counsel representing the named plaintiffs were adequate class counsel.

 By its third issue, Nissan contends the trial court abused its
discretion in finding that the claims of the purported class members
were typical of the class claims because the representatives:

 (a) were precluded by law from asserting breach of warranty
claims;


 (b) did not receive or rely upon any relevant representation;


 (c) have factual situations that differ significantly from the class
allegations; and


 (d) did not receive the same warnings and instructions as the
entire class. 


 Generally, the typicality requirement mandates that the class
representatives possess the same interests and suffer the same injury
as the class. East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S.
395, 403 (1977); Chilek, 966 S.W.2d at 121; Dresser Indus., 847
S.W.2d at 373. The class representative must not have interests
antagonistic to those of the rest of the class. Hi Lo Auto Supply, 986
S.W.2d at 388; Central Power & Light, 962 S.W.2d at 609.

 In issue 3(a), Nissan contends the trial court abused its discretion
in finding that the claims of the purported class members were typical
of the class claims because two of the class representatives purchased
used Nissan vehicles, and these class representatives cannot state a
cause of action for breach of the implied warranty of merchantability
because this warranty attaches only to the sale of new merchandise. 
Appellees admit that two class representatives did purchase used
Nissan vehicles.

 The class representative need not suffer precisely the same injury
as the other class members, but there must be a nexus between the
injury suffered by the representative and the injuries suffered by the
other class members. Rainbow Group, 990 S.W.2d at 358; Hi Lo Auto
Supply, 986 S.W.2d at 387; Chilek, 966 S.W.2d at 121. To be typical,
the representative's claims must arise from the same event or course of
conduct giving rise to the claims of other class members and must also
be based on the same legal theories. Hi Lo Auto Supply, 986 S.W.2d
at 387; FirstCollect, 976 S.W.2d at 301. Claims need not be identical
or perfectly coextensive, just substantially similar. Cedar Crest Funeral
Home, Inc. v. Lashley, 889 S.W.2d 325, 331 (Tex. App.--Dallas 1993,
no writ). Only a conflict that goes to the very subject matter of the
litigation will defeat a party's claim of representative status. Dresser
Indus., 847 S.W.2d at 373. 

 Here, the nexus required for typicality among the class
representatives is the same alleged defect which was marketed in
substantially the same way for all class members, including the class
representatives. Even if two representatives are not entitled to recover
damages under one theory, they have other theories under which they
may recover damages. Furthermore, the class representatives' claims
arise form the same event or course of conduct giving rise to the claims
of the class, and are based on the same legal theories.

 Nissan also contends in this sub-issue that appellees have failed
to plead a proper defect upon which to base their breach of warranty
claims and, therefore, there is no typicality. Nissan cites General
Motors Corp. v. Brewer, 966 S.W.2d 56 (Tex. 1998), in support of this
contention. Brewer was also a class action suit arising out of an
allegedly defective seat belt system. However, the Brewer plaintiffs did
not allege that the seat belt failed to restrain, but that the poor design
of the system, requiring disengagement of the seatbelt in order to enter
or exit the vehicles, rendered the system non-passive.

 The supreme court's decision in Brewer was a narrow one,
holding that the plaintiffs had not raised a fact issue under section
2.314(b)(3) of the Texas Business & Commerce Code, which provides
that a seller impliedly warrants goods to be fit for the ordinary purpose
for which such goods are used. In Brewer, the supreme court stated:

For goods to breach this warranty, they must be unfit for the
ordinary purposes for which they are used because of a lack
of something necessary for adequacy . . . . Here, the product
merely fails to fulfill the precise expectations of the consumer
because the product is more cumbersome to use than
anticipated. A product which performs its ordinary function
adequately does not breach the implied warranty of
merchantability merely because it does not function as well
as the buyer would like.


Id. at 57. This is not dispositive of the issue of defectiveness in the
instant case. Appellees allege more than mere cumbersomeness. They
claim the seat belt system and its accompanying warnings are defective
because they do not perform the ordinary function of a seat belt system
-- to provide adequate protection in a traffic accident -- and they seek
monetary damages to place adequate warnings in the vehicles and for
incidental and consequential damages.

 Here, the critical nexus among the class members is the alleged
defectiveness of the seat belt system which was manufactured and
marketed through a common course of conduct by Nissan. We overrule
issue 3(a).

 In issue 3(b), Nissan contends the trial court abused its discretion
in finding that the DTPA breach of express warranty claims of the
purported class members are typical of the class because the
representatives did not rely on any express warranty given by Nissan. 
Again, the class claims the snugness of the passive seat-belt system
created a representation that the wearer was safe without having to
engage the manual lap belt. This claim is a critical nexus between the
class representatives and the other class members. We overrule issue
3(b).

 In issue 3(c) Nissan contends the trial court abused its discretion
in finding that the claims of the purported class members were typical
of the class claims because the "factual situation" of each class
representative differs significantly from the class allegations.

a. Becky Fry Hernandez


 Class representative Becky Fry Hernandez purchased a used
Nissan automobile. When she purchased the vehicle, Hernandez did
not receive an owner's manual and the motor on the seat belt system
did not work. She always manually engages the shoulder and lap belts
in the vehicle and is concerned for the safety of her teenage daughter,
who will soon be driving the car.

b. Albertano Aguilera 


 Class representative Albertano Aguilera never received an owner's
manual, and he is subject to the false security syndrome.

c. Lois Burke


 Class representative Lois Burke received an owner's manual, but
she did not begin wearing the lap belt until a relative told her it was
important to do so. She is concerned for the safety of passengers who
ride with her.

 We cannot say, as a matter of law, that the testimony of these
three individuals precludes the typicality of the class representatives. 
There is no requirement that each class representative have exactly the
same "factual situation" as the others, or of the class as a whole. As
noted above, an analysis of typicality requires only that a nexus exists. 
Here, the nexus of the claim of the representatives and of the class is
that the Nissan safety belt system at issue is defective and
unreasonably dangerous, not only to the owners of the vehicles, but to
their passengers as well. The evidence of differing "factual situations"
may in fact bolster the class claims that the warnings given by Nissan
concerning the seat belt system were inadequate to reach all users of
Nissan vehicles. We overrule issue 3(c).

 In issue 3(d), Nissan contends the trial court abused its discretion
in finding that the claims of the purported class members were typical
of class claims because the 

representatives did not receive the same warnings and instructions (in
owner's manuals and on sun visors) as the entire class. 

 In the trial court, the plaintiff has the burden of establishing the
right to proceed as a class, but is not required to make an extensive
evidentiary showing in support of its motion for certification. Wood,
994 S.W.2d at 801; Chilek, 966 S.W.2d at 120; Clements v. LULAC, 800
S.W.2d 948, 952 (Tex. App.--Corpus Christi 1990, no writ). The trial
court is not required to weigh the substantive merits of each class
member's claim. FirstCollect, 976 S.W.2d at 299; Central Power &
Light, 962 S.W.2d at 609; Rio Grande Valley Gas, 962 S.W.2d at 640. 
A class proponent does not have to prove a prima facie case of liability
to be entitled to class certification. Central Power & Light, 962 S.W.2d
at 608; Microsoft, 914 S.W.2d at 607; Weatherly, 905 S.W.2d at 647. 
Therefore, "no evidence" and "insufficient evidence" standards do not
apply to the initial certification order. Rio Grande Valley Gas, 962
S.W.2d at 640. However, a class proponent must do more than merely
allege that the requirements for certification have been met and must
show "at least some facts" to support certification. Weatherly, 905
S.W.2d at 647; Life Ins. Co. of the Southwest v. Brister, 772 S.W.2d
764, 773 (Tex. App.--Fort Worth 1986, no writ).

 At the certification hearing in this case, appellees produced an
affidavit from an expert witness that all the passive restraint systems
in question, as well as their accompanying warnings, were essentially
identical. We find there are "at least some facts" in evidence that the
seat belt systems and their accompanying warnings are similar. We
overrule issue 3(d).

 Because we conclude the trial court did not abuse its discretion in
finding typicality, we overrule Nissan's third issue.

6. Superiority of Class Action


 The trial court found that 

 a class action is superior to other available methods for
the fair and efficient adjudication of the controversy. . . . 


 Class treatment must also be a superior method of
resolving the litigation in order for a class to be certified. The
most obvious alternative to this class action is to remit the
class members to individual actions. Here the class
members are so numerous that their joinder or intervention
would be unmanageable. . . Given the commonality of issues
and the fact that this Court has already achieved a degree of
familiarity with the relevant issues, having presided over
multiple hearings and having reviewed the copious briefs of
both parties, the potential filing of thousands, perhaps tens
of thousands if individual lawsuits, would constitute an
egregious waste of resources. Moreover, a class action is
superior since it should be economically unreasonable for
class members to individually adjudicate separate claims
particulary where the critical issues are factual, requiring
substantial discovery, expert testimony and trial time. The
prohibitive cost of individual litigation would not only be
detrimental to the class member but also to the Defendants
since they would be forced to litigate multiple proceedings. 
Accordingly, this Court finds that both efficiency and
economy of litigation are served by the certification of this
class. This class action is therefore superior to other
methods of adjudication.


 In its fourth issue, Nissan contends the trial court erred in finding
that a class action suit is the superior form of adjudication for appellees'
claims when:

 (a) the court cannot require the warnings and instructions
alleged to be necessary, and the class has not requested this
relief;


 (b) a federal agency is empowered to order a recall and cost-free
remediation of the alleged problem on a nationwide basis;


 (c) the federal agency remedy would eliminate any economic
damages; and


 (d) class representatives testified that an affirmative remedy
approach would be superior to the class action approach.


 Rule 42(b)(4) requires class treatment to be superior for the fair
and efficient adjudication of the controversy. Tex. R. Civ. P. 42(b)(4);
Bernal, 2000 Tex. LEXIS 50 at *29. Class certification is appropriate
where repeated litigation of the common issues in individual actions is
grossly inefficient, exorbitantly costly, and a waste of judicial resources. 
Rainbow Group, 990 S.W.2d at 360; FirstCollect, 976 S.W.2d at 303. 
Class action is superior to other methods of adjudication where any
difficulties which might arise in the management of the class are
outweighed by benefits of classwide resolution of common issues. 
Central Power & Light, 962 S.W.2d at 611; Weatherly, 905 S.W.2d at
655; National Gypsum Co. v. Kirbyville Indep. Sch. Dist., 770 S.W.2d
621, 626 (Tex. App.--Beaumont 1989, writ dism'd. w.o.j.). However,
although a goal of our system is to resolve lawsuits with great
expedition and dispatch and at the least expense, the supreme objective
of the courts is to obtain a just, fair, equitable and impartial adjudication
of the rights of the litigants under established principles of substantive
law; this means that convenience and economy must yield to a
paramount concern for a fair and impartial trial. Bernal, 2000 Tex.
LEXIS at *32. 

 In issue 4(a), Nissan contends the trial court erred in finding that
a class action suit is the superior form of adjudication for appellees'
claims because "the court cannot require the warnings and instructions
allegedly necessary and class counsel has not requested such relief."

 In this case, appellees are not asking the court for any injunctive
relief. They are seeking monetary damages to remedy the alleged
defect, and incidental and consequential damages to pay for alternate
transportation while the alleged defect is being remedied. Nissan
argues that the National Highway Traffic Safety Administration
("NHTSA") is a superior forum for appellees' claims. NHTSA, however,
may only order a safety recall of motor vehicles; it is not empowered to
order monetary damages. We overrule issue 4(a).

 In issues 4(b) and 4(c), Nissan contends the trial court erred in
finding that a class action suit is the superior form of adjudication for
appellees' claims because (1) NHTSA is empowered to order a recall
and cost-free remediation of the alleged problem on a nationwide basis,
and (2) the NHTSA remedy would eliminate any economic damages.

 Nissan argues that a better resolution would be a cost-free safety
recall of the vehicles by NHTSA. However, this matter has already been
rejected by that agency. On September 17, 1997, the trial court ordered
appellees to file a petition with the administrator of NHTSA, and they
did so. By letter dated December 11, 1997, NHTSA informed the parties
that it could not provide the relief (monetary damages) sought by the
appellees.

 As we have previously noted, appellees are not seeking injunctive
relief. They are seeking monetary damages to remedy the alleged
defect, and incidental and consequential damages to pay for alternate
transportation while the alleged defect is being remedied. All monetary
damages would not necessarily be eliminated by a NHTSA-ordered
recall, and NHTSA is not empowered to grant monetary damages. 
Accordingly, we conclude the trial court did not err in finding that a
class action suit is the superior form of adjudication for appellees'
claims. We overrule issues 4(b) and 4(c).

 In issue 4(d), Nissan contends the trial court erred in finding that
a class action suit is the superior form of adjudication for appellees'
claims because class representatives testified that an administrative
remedy approach would be superior to the class action approach.

 That the class representatives may have thought a nationwide
solution would be better is not dispositive of the issue of superiority of
the class action method. Evidence presented at the certification hearing
indicated that denying class certification would leave many class
members without any meaningful remedy, given the impracticability of
each member suing for his individual small monetary claim against
Nissan. See Bloyed, 916 S.W.2d at 952 (Class actions are efficient
means for numerous claimants with common complaint to obtain
remedy where it is not economically feasible to obtain relief by
traditional method of multiplicity of small individual suits). Also, if a
substantial number of Nissan owners decided to file suit, the cases
would use up many judicial resources. See Rainbow Group, 990
S.W.2d at 360; FirstCollect, 976 S.W.2d at 303 (class certification is
appropriate where repeated litigation of the common issues in individual
actions is grossly inefficient, exorbitantly costly, and a waste of judicial
resources). The class action conserves these resources and, as the trial
court noted, it has already become familiar with the issues in this case. 
See Tex. R. Civ. P. 42; Central Power & Light, 962 S.W.2d at 612 (One
factor in determining the superiority of the class action method is that
the trial court has invested time and effort in familiarizing itself with the
issues in dispute during several hearings). Appellants' issue 4(d) is
overruled.

 Because we conclude the trial court did not abuse its discretion in
finding that the class certification method is superior to the
administrative approach, we overrule Nissan's fourth issue.

7. Commonality


 The trial court found that questions of law and fact common to all
class members include at least the following:

(1) whether Nissan breached express and implied
warranties pursuant to Section 17.50(a)(2) of the
DTPA;


(2) whether Nissan used of employed false, misleading
and deceptive acts or practices as defined in Sections
17.50 and 17.46 of the DTPA in each or, or through a
combination of the following:


 (a) in causing confusion of or misunderstanding as
to the source, sponsorship, approval or
certification of goods or services in violation of
section 17.46(b)(2) of the DTPA;


 (b) in representing that goods or services have
sponsorship, approval, characteristics,
ingredients, uses, benefits, or qualities which
they do not have, in violation of section
17.46(b)(5) of the DTPA;


 (c) in representing that goods or services are of a
particular standard, quality or grade, or that
goods are of a particular style or model, if they
are of another, in violation of section 17.46(b)(12)
of the DTPA; and 


 (d) in representing that a guarantee or warranty can
involve rights, or remedies, which it does not
have or involve, in violation of section
17.46(b)(19) of the DTPA.


(3) whether Nissan breached the implied warranty of
merchantability under Section 2.314(b)(3) of the Texas
Business and Commerce Code because the subject
seat belt systems were not reasonably fit for their
intended purposes or fir for the ordinary purposes for
which such goods were used (i.e. providing safe
transportation and protecting occupants from injury in
collisions); and


(4) whether Nissan sold vehicles equipped with
inadequate warnings and instructions for the use of the
two point passive restraint system equipped with a
separate manual lap belt.


Plaintiffs' allegations are based on a common course of
conduct of manufacturing and selling a defective product,
and additionally that such product was allegedly marketed
through a common course of similar misrepresentation. 
Accordingly, the commonality requirement of Rule 42(a)(2)
is satisfied.


 By its first issue, Nissan contends the trial court abused its
discretion by identifying breach of warranty, defectiveness, and DTPA
representations as common questions when:

 (a) appellees have failed to plead a viable breach of warranty
claim;


 (b) the class includes used vehicle purchasers who cannot
assert implied warranty claims;


 (c) class members received varying warnings and instructions
regarding seat belt usage, and these varying warnings and
instructions are the basis of the class claims;


 (d) the record contains no evidence that any class member
received any relevant express warranty; and


 (e) the record contains no evidence that any class member
received any relevant untrue representation.


 Rule 42(a)(2) does not require that all or even a substantial portion
of the legal and factual questions be common to the class. Rainbow
Group, Ltd. v. Johnson, 990 S.W.2d 351, 358 (Tex. App.--Austin 1999,
pet. dism'd. w.o.j.); FirstCollect, 976 S.W.2d at 372. It requires only
that some legal or factual questions be common to the class. Rainbow
Group, 990 S.W.2d at 358; Reserve Life Ins. Co. v. Kirkland, 917 S.W.2d
836, 842 (Tex. App.--Houston [14th Dist.] 1996, no writ). The
commonality requirement means that an issue of law or fact exists that
inheres in the complaints of all the class members. Entex, 990 S.W.2d
at 919; Microsoft, 914 S.W.2d 602 611 (Tex. App.--Texarkana 1995,
writ dism'd w.o.j.). Questions common to the class are those which,
when answered as to one class member, are answered as to all class
members. Entex, 990 S.W.2d at 919; Chilek, 966 S.W.2d at 122;
Weatherly, 905 S.W.2d at 648. The common issue may be one of law
or fact; there need not be common issues of law and fact. FirstCollect,
976 S.W.2d at 300; Wente v. Georgia-Pac. Co., 712 S.W.2d 253, 255
(Tex. App.--Austin 1986, no writ). A single common question could
provide grounds for class action. FirstCollect, 976 S.W.2d at 300; Rio
Grande Valley Gas, 962 S.W.2d at 641; Microsoft, 914 S.W.2d at 611. 
The commonality requirement is generally considered satisfied where
(1) many members of the class are subject to the same
misrepresentation or omissions by reason of common documents, or (2)
the defendant is alleged to have engaged in a common course of
conduct. Rio Grande Valley Gas, 962 S.W.2d at 643; Weatherly, 905
S.W.2d at 651 (citing Adams v. Reagan, 791 S.W.2d 284, 289 (Tex.
App.--Fort Worth 1990, no writ)).

 In issue 1(a), Nissan contends the trial court erred in finding
commonality because appellees failed to plead a viable breach of
warranty claim.

 Nissan again cites Brewer, 966 S.W.2d 56, in support of its
contention. However, we have already held in issue 3(a) that Brewer
is not dispositive of the issue of defectiveness in this case. 
Furthermore, a common question is defined as one which when
answered as to one class member is answered as to all class members. 
See Reserve Life, 917 S.W.2d at 842. Here, a jury finding of "defect" or
"no defect" will affect the claim of each and every class member. We
overrule Nissan's issue 1(a).

 In issue 1(c), Nissan contends the trial court erred in finding
commonality because class members were given different warnings (in
owner's manuals and on sun visors) depending on the model
purchased.

 We have already held in issue 3(d) that there are "at least some
facts" in evidence regarding the similarity of the warnings and
instructions accompanying the seat belt system. See Weatherly, 905
S.W.2d at 647; Brister, 772 S.W.2d at 773. We overrule issue 1(c).

 In issue 1(d), Nissan contends the trial court erred in finding
commonality because there is no evidence that class members received
any relevant express warranty upon which they relied. Appellees assert
the snugness of the shoulder portion of the passive restraint system
against the chest of the driver and front seat passenger creates an
express warranty that the user is safely restrained without using the
manual lap belt. 

 While this may be a novel application of express warranty law, the
issue now before us is the commonality of this cause of action. Again,
a common question is defined as one which when answered as to one
class member is answered as to all class members. See Reserve Life,
917 S.W.2d at 842. A jury finding that Nissan "gave an express
warranty" or "did not give an express warranty" will affect the claim of
each and every class member. We overrule issue 1(d).

 In issue 1(e), Nissan contends the trial court erred in finding
commonality because there is no evidence that any class members
received any relevant untrue representations.

 As with the issues of defectiveness and breach of express
warranty, the class will have to prove it received untrue representations
about the seat belt system. This, too, is a common question. If the
class fails to convince a jury, this issue will affect the claims of each and
every class member. See Reserve Life, 917 S.W.2d at 842 (a common
question is defined as one which when answered as to one class
member is answered as to all class members). We overrule issue 1(e).

 In issue 1(b), Nissan contends the trial court erred in finding
commonality because the implied warranty of merchantability attaches
only to the sale of new merchandise, and some members of the class
purchased used Nissan vehicles. Nissan does not complain about the
class members that purchased new Nissan vehicles.

 Appellees concede that some members of the class purchased
used vehicles, and these class members may have no claim for breach
of the implied warranty of merchantability. However, it is uncontested
that these class members have other causes of action against appellant.

 Under prior Texas law, as long as class certification was sought
and decided at an early phase of the litigation, before supporting facts
have been fully developed, trial courts were mandated to favor certifying
a class action. FirstCollect, 976 S.W.2d at 299; Chilek, 966 S.W.2d at
123; Dresser Indus., 847 S.W.2d at 376. This was due in part to the
fact that a certification order was always subject to later modification
if circumstances required it. FirstCollect, 976 S.W.2d at 299; Rio
Grande Valley Gas, 962 S.W.2d at 640; Weatherly, 905 S.W.2d at 647
(citing Rule 42, which allows the trial court to alter, amend or withdraw
class certification at any time before final judgment, or order the naming
of additional parties or the division of the class into subclasses to insure
adequate representation).

 However, recent Texas Supreme Court authority overturns this
case law. The Bernal opinion "reject[s] this approach of certify now and
worry later," Bernal, 2000 Tex. LEXIS 50 at *23, and requires a rigorous
analysis now be made at the initial certification hearing to determine
whether all the prerequisites to certification have been met. Id. at *24. 
While this pronouncement was made in the context of the question of
whether common issues will predominate over individual issues at trial,
it is clear the law now requires the class certification order to be as
specific as possible as to the mechanics of the litigation. See id. at *24
("Although it may not be an abuse of discretion to certify a class that
could later fall, we conclude that a cautious approach to class
certification is essential."). Furthermore, "the trial court's discretion to
define, modify, subclassify, or decertify in response to the case's
development counsels in favor of remanding to the trial court when an
appellate court identifies definitional problems." Intratex Gas Co. v.
Beeson, 2000 Tex. LEXIS 23, *24 (March 9, 2000).

 We conclude the trial court abused its discretion in finding
commonality because the class members who purchased used vehicles
may have no claim for breach of the implied warranty of
merchantability. We sustain issue 1(b).

8. Predominance of Common Issues Over Individual Issue


 In its class certification order, the trial court found that 

The questions of law or fact common to the members of the
class predominate over any questions affecting only
individual members. . . . The test for establishing
predominance of common issues is whether they will be the
object of most of the efforts of the parties and the court, not
whether common issues outnumber individual issues. In
deciding whether common issues predominate, this Court
need only identify substantive law issues that would control
the litigation. This Court need not weigh the substantive
merits of each class member's claim, nor need the class
representative make any extensive evidentiary showing of
this or her right to prevail. Having identified the substantive
law issues that will control this litigation, including those set
forth above, this Court concludes that common issues will
be the object of most of the efforts of the litigants and the
Court.


 By its second issue, Nissan contends the trial court erred in finding
that common issues will predominate over individual issues at trial
when:

 (a) reliance, causation, damages and other issues must be
litigated for each class member;


 (b) class counsel submitted no trial plan and did not otherwise
indicate a method for resolving the individual issues; and


 (c) the record contained no information from which the court
could conclude the individual issues would not be the focus
of litigation.


 The commonality requirement is subsumed under the more
stringent rule 42(b)(4) requirement that common questions of law or
fact predominate over questions involving individuals. Tex. R. Civ. P.
42(b)(4); Bernal, 2000 Tex. LEXIS 50 at *19; Rio Grande Valley Gas, 962
S.W.2d at 642 (citing Amchem Prods., Inc. v. Windsor, 117 S.Ct. 2231,
2243 (1997) (construing analogous requirement under Federal Rule of
Civil Procedure 23)). The existence of a common question is not
enough to suffice for class certification; the court has the duty to
evaluate the relationship between common and individual issues. Tex.
R. Civ. P. 42(b)(4); Rainbow Group, 990 S.W.2d at 360; E. & V. Slack
v. Shell Oil Co., 969 S.W.2d 565, 569 (Tex. App.--Austin 1998, no pet.). 
The test for predominance is not whether common issues outnumber
the individual issues, but instead whether common or individual issues
will be the object of most of the efforts of the litigants and the court. 
Bernal, 2000 Tex. LEXIS 50 at *19; Rainbow Group, 990 S.W.2d at 360;
Hi Lo Auto Supply, 986 S.W.2d at 387; Entex, 990 S.W.2d at 919;
Central Power & Light, 962 S.W.2d at 610. 

 In the past, there was a presumption that, in cases where it
appeared common issues might predominate over individual issues, the
most efficient approach for the trial court was to certify the class and,
if necessary after the case had developed, to dissolve or modify the
class if common questions did not predominate at trial. Rainbow
Group, 990 S.W.2d at 360; Sheldon, 965 S.W.2d at 72; Brister, 772 
S.W.2d at 722; Health & Tennis Corp., 928 S.W.2d at 590. However,
the Texas Supreme Court has recently redefined the standards by
which the predominance of common issues over individual ones is
analyzed. As noted above, in Bernal, the supreme court rejected the 
approach to class certification of "certify now and worry later" and
emphasized the importance of vigorously applying the predominance
requirement at the time initial class certification is sought. Bernal, 2000
Tex. LEXIS 50 at *23 (citing Amchem Products, Inc. v. Windsor, 521
U.S. 591, 623 (1997)). The predominance requirement is intended to
prevent class action litigation when the sheer complexity and diversity
of the individual issues would overwhelm or confuse a jury or severely
compromise a party's ability to present viable claims or defenses. 
Bernal, 2000 Tex. LEXIS 50 at *20-21. The Bernal opinion reiterated
that the more exacting standards of the predominance inquiry act as a
check on the flexible commonality test under rule 42(a)(2):

Courts must perform a rigorous analysis before ruling on
class certification to determine whether all prerequisites to
certification have been met. Although it may not be an
abuse of discretion to certify a class that could later fail, we
conclude that a cautious approach to class certification is
essential. The flexibility of Rule 42 enhances the usefulness
of the class-action device, [but] actual, not presumed,
conformance with [the Rule] remains indispensable. As the
Supreme Court stressed in Amchem: "Courts must be
mindful that the rule as now composed . . . . limits judicial
inventiveness." Thus it is improper to certify a class without
knowing how the claims can and will likely be tried.


Id. at *24-25 (citations omitted).

 In issue 2(a), Nissan contends the trial court erred in finding that
common issues will predominate because reliance, causation, damages
and other issues must be litigated for each class member.

 In determining whether common issues predominate, the trial
court need only identify substantive law issues that will control the
litigation. Id. at *19; Central Power & Light, 962 S.W.2d at 610. Class
certification will not be prevented merely because damages must be
determined separately for each member of the class, nor because of the
presence of an arguable defense peculiar to certain members. Central
Power & Light, 962 S.W.2d at 610; Angeles/Quinoco Sec. Corp. v.
Collison, 841 S.W.2d 511, 516 (Tex. App.--Houston [14th Dist.] 1992,
no writ). The trial court found that the following common substantive
law issues will control the case: (1) an alleged common course of
manufacturing a defective product; (2) an alleged common course of
selling a defective product; and (3) an alleged marketing scheme based
on a course of similar misrepresentation. We overrule issue 2(a).

 In issue 2(c), Nissan contends the trial court erred in finding that
common issues will predominate because the record contained no
information from which the court could conclude that individual issues
would not be the focus of litigation.

 At the certification hearing, class counsel argued that common
issues would predominate over individual ones because: (1) the seat
belt systems in question operate in an essentially identical manner,
giving rise to the same express warranty for each class member; (2) the
warnings given in the vehicles were essentially identical, according to
the plaintiffs' expert, giving rise to the same defect for each class
member; and (3) the cost-of-repair damages would be virtually identical
for each class member. He also cited several cases, involving similar
circumstances, in which a class had been certified. Nissan's counsel
disputed each of these claims, and provided examples of several cases
in which a class had not been certified.

 The record reflects the facts on this issue were vigorously
disputed. A trial court does not abuse its discretion when it bases its
decision on conflicting evidence. Weatherly, 905 S.W.2d at 648; Vinson
v. Texas Commerce Bank--Houston, 880 S.W.2d 820, 823 (Tex.
App.--Dallas 1994, no writ). We overrule issue 2(c).

 In issue 2(b), Nissan contends the trial court erred in finding that
common issues predominate because class counsel submitted no trial
plan and did not otherwise indicate a method for resolving individual
issues. 

 In Bernal, the supreme court stated:

it is improper to certify a class without knowing how the
claims can and will likely be tried. A trial court's certification
order must indicate how the claims will likely be tried so that
conformance with Rule 42 may be meaningfully evaluated. 
"Given the plaintiffs' burden, a court cannot rely on [mere]
assurances of counsel that any problems with predominance
or superiority can be overcome." To make a proper analysis,
"going beyond the pleadings is necessary, as a court must
understand the claims, defenses, relevant facts, and
applicable substantive law in order to make a meaningful
determination of the certification issues." Any proposal to
expedite resolving individual issues must not unduly restrict
a party from presenting viable claims or defenses without
that party's consent. If it is not determinable from the outset
that the individual issues can be considered in a
manageable, time-efficient, yet fair manner, then certification
is not appropriate.


Bernal, 2000 Tex. LEXIS 50 at *25-26.

 Bernal clearly requires that the certification order contain a plan for
dealing with individual issues, and for the specifics of the plan to be
considered by the trial court in determining whether common issues
will predominate over individual issues. In light of Bernal, we conclude
the trial court erred in finding that common issues predominate because
class counsel (1) did not submit a trial plan and (2) did not otherwise
indicate a method for resolving individual issues. We sustain issue 2(b).

9. Conclusion


 We have concluded the trial court abused its discretion in finding
commonality because the class members who purchased used vehicles
may have no claim for breach of the implied warranty of
merchantability, although they have other causes of action against
appellant. We remand to the trial court to determine if the
establishment of sub-classes can cure this problem.

 We have also concluded the trial court erred in finding that
common issues predominate because class counsel (1) did not submit
a trial plan and (2) did not otherwise indicate a method for resolving
individual issues. We remand to the trial court for a new determination
of whether, under the Bernal standards, common issues will
predominate over individual issues.

 This case is remanded to the trial court for further proceedings
consistent with this opinion.



 FEDERICO G. HINOJOSA

 Justice



Publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

17th day of August, 2000.

 

1. Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (3) (Vernon 1998).
2. The suit expressly excludes any claims for personal injury.
3. Section 17.50 provides, in relevant part, as follows:


(a) A consumer may maintain an action where any of the following
constitute a producing cause of economic damages or damages
for mental anguish:

 (1) the use or employment by any person of a false,
misleading, or deceptive act or practice that is:

 (A) specifically enumerated in a subdivision of
Subsection (b) of Section 17.46 of this subchapter;
and

 (B) relied on by a consumer to the consumer's
detriment;

 (2) breach of an express or implied warranty;


Tex. Bus. & Comm. Code Ann. §17.50(a)(1) & (2) (Vernon Supp. 2000).